THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* JOHN S. BIESECKER, Respondent.

1. CONSTITUTIONAL LAW — LIMITATION AS TO POLICE POWER OF LEGISLATURE. While the police power of the legislature has its limitations, each of which cannot be accurately stated, except as required by the particular case under review, generally speaking, the following propositions as to legislation relating to articles of food may be deduced from the authorities:·

(1) That the legislature cannot forbid or wholly prevent the sale of a wholesome article of food.

(2) That legislation intended and reasonably adapted to prevent an article being manufactured in imitation or semblance of a well known article in common use and thus imposing upon consumers or purchasers is valid.

(3) That, in the interest of public health, the legislature may declare articles of food not complying with a specified standard unwholesome and forbid their sale.

2. PROHIBITION IN AGRICULTURAL LAW AGAINST SALE OF DAIRY PRODUCTS CONTAINING A PRESERVATIVE VOID. Section 27 of the Agricultural Law (L. 1893, ch. 338, as amd. by L. 1900, ch. 534), providing that "No person shall sell, offer or expose for sale, any butter or other dairy products containing a preservative, but this shall not be construed to prohibit the use of salt in butter or cheese, or spirituous liquors in club or other fancy cheese or sugar in condensed milk. No person or persons, firm, association or corporation shall induce or attempt to induce any person or persons to violate any of the provisions of the agricultural law. Any person, firm, association or corporation selling, offering or advertising for sale any substance, preparation or matter for use in violation of the provisions of the agricultural law shall be guilty of a viola-

tion of this act," cannot be considered as intended to prevent fraud or imposition on buyers and consumers; nor is it a legislative determination in the interest of public health that preservatives, other than those specified, are unwholesome adulterations of dairy products, since it does not make the introduction of a foreign substance into them, however deleterious an adulteration, nor an adulteration illegal, except where the substance is introduced for the purpose of preserving them, which is a proper and lawful object in itself; the provision is, therefore, unconstitutional and void, because it absolutely forbids the sale of articles of food when they contain any other preservatives than those specified, even though they are not rendered unwholesome by the use of such ingredient.

*People* v. *Biesecker*, 58 App. Div. 391, affirmed.

(Argued October 31, 1901; decided December 10, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 18, 1901, which affirmed a judgment of Special Term sustaining a demurrer to the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John C. Davies, Attorney-General (Samuel S. Slater* of counsel), for appellant. The prohibition against the sale of dairy products containing a preservative is constitutional if enacted to protect the public health or to prevent fraud. (*People* v. *King*, 110 N. Y. 423; *People* v. *Girard*, 145 N. Y. 105; *People ex rel.* v. *Warden, etc.*, 157 N. Y. 123; *Colon* v. *Lisk*, 153 N. Y. 196; *Health Dept.* v. *Rector, etc., Trinity Church*, 145 N. Y. 32; *Matter of Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 N. Y. 377; *People* v. *Gillson*, 109 N. Y. 389.) The prohibition against the sale of dairy products containing a preservative is for the protection of the public health. In protecting the public health from some harmful preservatives the legislature may prohibit the sale of all preservatives in the exercise of its discretion. (*Colon* v. *Lisk*, 153 N. Y. 188; *People* v. *Cipperly*, 37 Hun, 324.) The prohibition of the sale of a dairy product containing a preservative was enacted to prevent deception, and even if all preservatives are harmless, their sale can be prohibited to prevent

fraud. (*People* v. *Girard,* 145 N. Y. 105.) The presumption of constitutionality under the decisions cannot be overcome by defendant. (*People* v. *Gillson,* 109 N. Y. 397; *People* v. *Girard,* 145 N. Y. 105; *Colon* v. *Lisk,* 153 N. Y. 188; *People* v. *B. Fish Co.,* 164 N. Y. 97; *People ex rel.* v. *Warden, etc.,* 144 N. Y. 536; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *West,* 106 N. Y. 293; *People* v. *Kibler,* 106 N. Y. 321; *People ex rel.* v. *Bd. of Suprs.,* 147 N. Y. 1; *People ex rel.* v. *Warden, etc.,* 157 N. Y. 149.)

*Herbert R. Limburger, Edward Lauterbach* and *Henry L. Scheuerman* for respondent. The complaint does not state facts sufficient to constitute a cause of action, because section 27 of the Agricultural Law is unconstitutional. (*Strong* v. *Stebbins,* 5 Cow. 210; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *Gillson,* 109 N. Y. 389; *People* v. *Marx,* 99 N. Y. 377; *People ex rel.* v. *Warden, etc.,* 157 N. Y. 116; *Dorsey* v. *Texas,* 38 Tex. Crim. Rep. 527; *Helena* v. *Dwyer,* 39 L. R. A. 266; *People ex rel.* v. *Pease,* 30 Chicago L. N. 277; *People* v. *B. F. Co.,* 30 Misc. Rep. 130; *People* v. *Cipperly,* 101 N. Y. 634; 37 Hun, 324.) The complaint does not state facts sufficient to constitute a cause of action, because section 37 of the Agricultural Law, which prescribes the penalty for violation, must be construed to authorize a criminal but not a civil action. (*Ex parte Lange,* 18 Wall. 163; *Berkowitz* v. *United States,* 93 Fed. Rep. 452; *Coffey* v. *United States,* 116 U. S. 436; *United States* v. *McKee,* 4 Dillon [U. S.], 128; *United States* v. *Shapleigh,* 12 U. S. App. 26; *Lees* v. *U. S.,* 150 U. S. 476; *Boyd* v. *U. S.,* 116 U. S. 616; *Fox* v. *Ohio,* 5 How. [U. S.] 410; *People* v. *Goodwin,* 18 Johns. 187; *James* v. *Commonwealth,* 12 S. & R. [Penn.] 235.)

Cullen, J. This action is brought to recover a penalty for the violation of section 27 of the Agricultural Law, as amended by chapter 534 of the Laws of 1900. The provisions of that section, which it is alleged the defendant violated, are as follows: "No person shall sell, offer or expose for sale, any but-

ter or other dairy products containing a preservative, but
this shall not be construed to prohibit the use of salt in butter
or cheese, or spirituous liquors in club or other fancy cheese
or sugar in condensed milk. No person or persons, firm,
association or corporation shall induce or attempt to induce
any person or persons to violate any of the provisions of the
agricultural law . Any person, firm, association or corporation
selling, offering or advertising for sale any substance, prepara-
tion or matter for use in violation of the provisions of the
agricultural law shall be guilty of a violation of this act."
The complaint merely follows the statutes, and alleges that
the defendant advertised for sale a preservative called " pre-
servaline " for use with butter, " which was neither salt to be
used in butter or cheese, sugar to be used in milk, nor liquor to
be used in club or fancy cheese," with intent that the said pre-
servative should be used in butter to be offered and exposed
for sale. The defendant demurred to the complaint, claiming
that the statutory enactment quoted was unconstitutional and
void, and in this contention he has been upheld by the Special
Term and the Appellate Division.

We think the disposition of this case by the courts below
was correct. It is not possible to define accurately the limits
of the police power, the exercise of which is vested in the
legislature, nor have the courts, as a rule, essayed that task
further than to state in very general terms the nature and
object of such power. Still, the power has its limitations and
those limitations have been to a large extent determined by
the process of exclusion and inclusion, as the courts have
upheld particular cases of legislation as valid exercises of the
power and in other cases have declared the legislation void.
In *People* v. *Marx* (99 N. Y. 377) a statute absolutely pro-
hibiting the manufacture and sale of oleomargarine or any
compound as a substitute for butter and cheese was held void.
The statute having been subsequently amended so as to pro-
hibit the manufacture or sale of any article so compounded as
to imitate butter was upheld in *People* v. *Arensberg* (105 N.
Y. 123) as valid legislation to prevent fraud on purchasers

and consumers.   In *People* v. *Kibler* (106 N. Y. 321) a stat-
ute defining what should be deemed unwholesome or adulter-
ated milk and prohibiting its sale was held constitutional.   In
*People* v. *Girard* (145 N. Y. 105) a statute forbidding the
manufacture or sale of vinegar containing any artificial color-
ing matter was also held valid.

From these cases the following propositions may be deduced :
1. That the legislature cannot forbid or wholly prevent the
sale of a wholesome article of food.   2. That legislation
intended and reasonably adapted to prevent an article being
manufactured in imitation or semblance of a well-known arti-
cle in common use and thus imposing upon consumers or pur-
chasers is valid.   3. That in the interest of public health the
legislature may declare articles of food not complying with
a specified standard unwholesome and forbid their sale.
Though these principles, like most legal principles, are true
only within limits, there would not seem much chance of
conflict in their practical application except between the first
and last.   In the first of the milk cases (*People* v. *Cipperly*,
101 N. Y. 634, decided upon opinion of LEARNED, P. J., in
37 Hun, 319) it was held that the statutory declaration of
what was wholesome milk was conclusive, and the defendant
was not allowed to show in defense that the milk sold by him
was in fact unadulterated and not unwholesome.   The first
oleomargarine case can be differentiated from this on the
ground that the statute forbade its sale as a substitute to
*take the place* of butter and not as an unwholesome article of
food.   Still, that distinction is narrow and I imagine that the
sale and consumption of a well-known article of food or a
product conclusively shown to be wholesome could not be for-
bidden by the legislature even though it assumed to enact the
law in the interest of public health.   The limits of the police
power must necessarily depend in many instances on the com-
mon knowledge of the times.   An enactment of a standard of
purity of an article of food, failing to comply with which the
sale of the article is illegal, to be valid must be within reason-
able limits and not of such a character as to practically pro-

hibit the manufacture or sale of that which as a matter of common knowledge is good and wholesome.

The statute before us cannot be justified as an exercise of power to prevent fraud or imposition on buyers and consumers. Doubtless the legislature could provide that where butter contains any preservative except salt or sugar the package should be clearly marked with a label stating such fact, and it might require any notice adapted to informing the public of the nature and treatment of the article offered for sale. This it has not done, but it has absolutely forbidden the sale. Nor is the legislation similar to that before the court in the vinegar case. In that case there was no prohibition of vinegar produced from other materials than cider. The forbidden thing was the use of artificial coloring matter, which was not a necessary ingredient of the article produced, but served the sole purpose of preventing the consumer distinguishing between the different kinds of vinegar. In the present case the object of the forbidden article used is not to practice any deception, but to prevent decay in a product which, without the presence of some foreign substance, naturally becomes unfit for use in a very short period. The effect, therefore, of the statute is to prohibit the preservation of dairy products except by salt in butter and cheese and sugar in condensed milk and their sale, no matter how harmless the ingredients used for that purpose may be and no matter how efficiently they attain their purpose.

It is sought, however, to uphold this statute under the principle of the milk cases, on the theory that it is a legislative determination that preservatives other than salt and sugar are unwholesome adulterations of dairy products. As pointed out by the learned courts below, there is no legislative declaration to that effect. Passing, however, that consideration, there is a more serious difficulty in the way of such a course. If the statute had provided that the admixture of any substance with dairy products other than salt or sugar should be deemed an adulteration, and declared such dairy products when so adulterated unwholesome, the case would resemble

the milk case, and the question would be presented whether such far-reaching restrictions could be upheld as reasonable regulations in favor of public health. As to that question we express no opinion. But this provision of the statute is not aimed at adulterations. I cannot find in the Agricultural Law any general prohibition against adulterations in butter and cheese, although there is an express provision to that effect in the case of milk. Section 26 seems to forbid the use of acids or other deleterious substance only in the case of imitation butter. Though, if I err in this and the application of the section be general, the provision under review is unnecessary so far as public health is involved. Section 407 of the Penal Code forbids the sale of adulterated food only (except in certain specified cases) when made without disclosing or informing the purchaser of the adulteration. It will be seen, therefore, that the sale of adulterated butter or cheese is not necessarily an offense, except so far as made such by the statutory enactment under review. That enactment does not make the introduction of a foreign substance an adulteration, nor an adulteration illegal, except in the case of a preservative. How then can it be said that the statute is intended to prevent adulteration or the introduction of foreign substance into butter or cheese when the sole test of criminality under it is that the substance is introduced for the object or with the effect of preserving butter or cheese? If the foreign substance has not this effect, no matter how deleterious it may be, the use of it does not violate this provision. It is plain, therefore, that this statute is solely aimed at the preservation of dairy products by the use of other substances than salt, sugar and spirituous liquor. Why the use of sugar is forbidden in milk, salt in butter and cheese, and particularly why that of liquor is permitted in club or fancy cheese and forbidden in other cheese it is difficult to understand on the theory that its object was the protection of the public health. The preservation of food and the arrest of its tendency to decay is certainly a proper and lawful object in itself. It is a work in which man has been engaged to

some extent from earliest history. It is the subject of large industries in this country, and the products of those industries are generally used by the community and are lawful objects of manufacture and sale. The industry has grown to an enormous extent. These are matters of common knowledge. There is doubtless in the prosecution of these industries danger of adulteration and of the use of processes injurious to public health. The regulation of these subjects for the protection of the public health and the prevention of imposition on consumers is within the power of the legislature, and the propriety of its exercise cannot be questioned. But while it may regulate, the legislature may not destroy the industry, and that is not a valid regulation which in dealing with the means of preserving food makes the preservation of food itself an unlawful act. Ingredients and processes may be prohibited as unwholesome or causing deception, but not solely because they preserve.

The judgment appealed from should be affirmed, with costs.

Parker, Ch. J., Gray, O'Brien, Haight, Landon and Werner, JJ., concur.

Judgment affirmed.