### PEOPLE v. VON KAMPEN.

(Supreme Court, Appellate Division, Second Department. March 29, 1912.)

FOOD (§ 1*)—OLEOMARGARINE—SALE OF COLORING MATTER.

Agricultural Law (Consol. Laws 1909, c. 1) § 41, prohibiting any person selling oleomargarine from selling, giving, and delivering with it any coloring matter, meaning, as shown by the context, coloring matter which may give the oleomargarine the appearance of butter, is not in restraint of trade, or an interference with vested rights, but a permissible regulation, in the exercise of the police power, of a sale of a thing, in the way of preventing an unlawful use thereof, by interfering with the facilities for making a compound in imitation of butter, and making unlawful use of it.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 1.*]

Thomas and Woodward, JJ., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Municipal Court, Borough of Brooklyn, First District.

Peter H. Von Kampen was found guilty of, and fined for, violation of Agricultural Law, § 41, and appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

William C. Breed (Henry H. Abbott and Sumner Ford, on the brief), for appellant.

Charles M. Stern, Deputy Atty. Gen. (Valentine Taylor, on the brief), for the People.

JENKS, P. J. An agent of the agricultural department went to the grocer's shop of the defendant and asked the defendant if he sold oleomargarine. The defendant said that he did, whereupon the agent asked him whether he gave coloring matter with it, and he said that he did. Thereupon the agent bought and received a pound of oleo-margarine, and the defendant at the same time handed to him a cap-sule which contained coloring matter. It was conceded that "color-ing matter can be purchased very generally at druggists', groceries, and other establishments as a commodity by itself, such as is used for coloring butter or oleomargarine." The Municipal Court found the defendant guilty of a violation of section 41 of the Agricultural Law (Consol. Laws 1909, c. 1), and imposed a fine.

This appeal attacks the constitutionality of the said statute. The part thereof which is germane to this case reads:

"No person selling any oleaginous substance not made from pure milk or cream of the same as a substitute for butter shall sell, give away or deliver with such substance any coloring matter."

The statutes of this state prohibit the manufacture or sale of any article compounded so as to imitate butter, and such legislation has been upheld as preventive of fraud or deception upon purchasers or con-sumers. People v. Arensberg, 105 N. Y. 123, 11 N. E. 277, 59 Am. Rep. 483; McCray v. United States, 195 U. S. 64, 24 Sup. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; People v. Biesecker, 169 N. Y. 53, 56, 61 N. E. 990, 57 L. R. A. 178, 88 Am. St. Rep. 534. See, too, as to the principle, People v. Girard, 145 N. Y. 105, 39 N. E. 823, 45 Am. St. Rep. 595. Section 39 of the same act provides in part:

"No person shall coat, powder or color with annatto or any coloring mat-ter whatever, butterine or oleomargarine or any compound of the same or any product or manufacture made in whole or in part from animal fats * * * by means of which such product, manufacture or compound shall resemble butter or cheese, the product of the dairy; nor shall he have the same in his possession with intent to sell the same nor shall he sell or offer to sell the same."

Reference to the context of this very section 41 indicates that "the coloring matter" referred to is such·as may be used for the artificial coloring of oleomargarine; for immediately preceding this prohibition · is a provision against the addition to the substance or combination therewith of "any annatto or compounds of the same, or any other substance or substances whatever, for the purpose or with the effect of imparting thereto a color resembling yellow, or any shade of yellow butter or cheese, nor introduce any such coloring matter or other sub-

stance into any of the articles of which the same is composed." The words "coloring matter," which are, of course, generic, and as such could be applicable to all substances which may change or afford color, are to be interpreted as meaning coloring matter which may give the oleomargarine or like substance the appearance of butter or cheese. See Endlich on the Interpretation of Statutes, §§ 400, 403; Sutherland on Statutory Construction, §§ 268, 269; People v. Richards, 108 N. Y. 137, 15 N. E. 371, 2 Am. St. Rep. 373; Burks v. Bosso, 180 N. Y. 341, 73 N. E. 58, 105 Am. St. Rep. 762. Thus we may read this legislative prohibition as aimed at such coloring matter as may, when added to oleomargarine or like substance, or combined therewith, give it the appearance of butter or of cheese. If the furnishing of such coloring matter with the purchase of oleomargarine may facilitate a compound so that it imitates butter, then I think that the statute may be sustained as, to quote the language of Cullen, J., in People v. Biesecker, supra, "legislation intended and reasonably adapted to prevent an article being manufactured in imitation or semblance of a well-known article in common use and thus imposing upon consumers or purchasers."

If the purchaser thus can obtain such coloring matter, not only may he be aided to a course of deception by the convenience of one transaction, but he also is furnished with such matter adapted for the very purpose of imitation, and presumably in its effective form and proper quantity. With the means thus furnished, all that apparently would remain would be the act of addition or compounding. Thus the means of fraud or deception, of which means he may be ignorant, are put in his hand simultaneously with the sale of the subject-matter of such wrongdoing and incident to it. Not only is opportunity offered, but it may well be that the doing of the forbidden act itself is urged, in that it may be so readily done.

It is said that the prohibition is in restraint of trade. Rather is it in regulation, in the exercise of the police power, of the sale of a certain thing in the way of prevention of an unlawful use thereof. If one desires to purchase the commodity itself, as an independent transaction, he may do so freely anywhere and at any time, save as restricted by this statute. Such regulation is for the Legislature, and the terms thereof are within its police power unless they—

"are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitary, interfered with or destroyed without due process of law." Gundling v. Chicago, 177 U. S. 183, 188, 20 Sup. Ct. 633, 635, 44 L. Ed. 725.

The assertion that such a regulation interferes with vested rights is tantamount to saying that, although the manufacture or sale of artificially colored oleomargarine is unlawful, yet the purchaser of oleomargarine has a vested right not to be hampered in the means of working a violation of the law. See People v. Girard, supra.

It may well be that the purchaser of oleomargarine is hindered to an extent from obtaining coloring matter with which to color oleomargarine for sentimental or other reasons which is intended for his own consumption; but the probabilities are that one who would thus pur-

chase both the oleomargarine and the coloring ingredient has in view some subsequent purchaser from him, or some consumer other than himself, and that he seeks the means of compound to work fraud or deception upon some other. The question of intent is not involved in this statute. People v. West, 106 N. Y. 293, 12 N. E. 610, 60 Am. Rep. 452; People v. Bowen, 182 N. Y. 1, 74 N. E. 489. In justice to the defendant, I may add that there is no proof of concealment or evasion in the sale and the supply of the coloring matter, and that the defendant did not deny his acts.

The judgment is affirmed.

BURR and CARR, JJ., concur.

THOMAS, J. (dissenting). The defendant has been convicted for selling at one time a pound of oleomargarine as such, and upon request furnishing therewith a package of harmless coloring matter, which two things, if blended later, as doubtless intended, would tend to give the former the appearance of butter. There is no evidence that either article was unhealthful, that there was any deception on the sale thereof, or that there was any intention on the part of the vendor or purchaser that the same would or could be used to deceive any person, or that the blended articles would be imposed upon any person as butter. The statute does not forbid a separate sale of the articles, but attempts to forbid a simultaneous sale of the two articles, so that they are included in one transaction. The statute in question is section 41 of the Agricultural Law, as amended by chapter 357, Laws of 1909, which, among other things, provides:

"And no person selling any oleaginous substance not made from pure milk or cream of the same as a substitute for butter shall sell, give away or deliver with such substance any coloring matter."

The defendant urges that this prohibition is contrary to article 1, §§ 1 and 6, of the Constitution of the state of New York, and to the fourteenth amendment to the federal Constitution. This general subject has during the last 30 years been so repeatedly matter of consideration and decision by the courts in this state that no original thought can be added to the discussion. Liberty to contract, to hold and to sell property, to follow lawful occupations, as protected by constitutional guaranties, has been repeatedly asserted, and the same has been subordinated, to a degree, only to the real necessities of protecting the public welfare, in such respect as health and fraudulent practices. The present effort should be to find the scope of the decisions and ascertain whether they denounce the statute in question. The sale of wholesome oleomargarine, without deception, may be regulated, but not prohibited (People v. Marx, 99 N. Y. 377, 2 N. E. 29, 52 Am. Rep. 34); but the sale of the article so artificially colored as to resemble butter may be prohibited, inasmuch as it in such combination presents opportunities for deception that in the view of the Legislature could be prevented only by the prohibition. People v. Arensberg, 105 N. Y. 123, 11 N. E. 277, 59 Am. Rep. 483. A similar act for the protection in the sale of cider vinegar is valid. People v. Girard, 145 N. Y. 105, 39 N. E. 823, 45 Am. St. Rep. 595.

Therefore the law is that the defendant may not be forbidden to make separate sale of the oleomargarine and a distinctly separate sale of the coloring matter. But the prohibition is that, when the oleomargarine is sold, there shall not be coincidently an accompanying gift of the coloring matter. This in effect is a direction that the two articles shall not be made the subjects of one and the same sale. I find no explanation of the purpose of this prohibition, except the suggestion that it aids the general purpose, to prevent deception in the sale and use of oleomargarine. But in what way it will so operate is not stated, and it is certainly beyond conception. There is no purpose in the law to prevent a consumer blending the two substances for his own personal consumption, or for that of his family. It is true that oleomargarine and the coloring matter cannot be blended for intended sale, nor can it be used in such form in hotels, restaurants, and other places of public entertainment, under section 40 of the Agricultural Law. The prohibition in question does not facilitate the unlawful manufacture, sale, or use in the public places indicated of oleomargarine, nor does it tend to deter such manufacture and sale. What it does do is to compel storekeepers to sell oleomargarine for private consumption at one instant, and coloring matter at another. This is an impairment of the liberty to sell property, a valuable quality of ownership, by attaching a restriction that has no relation to any forbidden or injurious act.

It may be argued that the restriction is trifling; that it inconveniences in small degree, as it merely dissociates the disposition of two articles. But little property rights are entitled to zealous protection. If the present law is valid, it would be equally so to forbid the sale of flour with a cake of yeast; of articles that the consumer would combine in the various articles of food for use in the household. The provision is one of those petty annoyances that overzealous and indiscreet men, losing sight of the substantial means of protecting commerce, cause to be enacted inadvertently. There may be a minimum aggression in this; but it is an excess of legislative power, which should be checked whenever it appears.

The judgment should be reversed.

WOODWARD, J., concurs.