THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PETER H. VON KAMPEN, Appellant.

Public health — Agricultural Law — validity of provision prohibiting sale of coloring matter for oleomargarine or other substitutes for butter.

1. The legislature may, in the exercise of the police power, exclude from the market a commodity, the sale of which may result in fraud upon or deception of the public.

2. The statute which provides that "no person selling any oleaginous substance not made from pure milk or cream of the same as a substitute for butter shall sell, give away or deliver with such substance any coloring matter" (L. 1909, ch. 357, § 1), is within the police power of the state and not violative of any provision of the Federal or State Constitutions.

*People* v. *Von Kampen*, 149 App. Div. 887, affirmed.

(Argued January 21, 1914; decided March 3, 1914.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial

department, entered March 29, 1912, affirming a judgment of the Municipal Court of the city of New York in favor of plaintiff in an action to recover a penalty for violation of section 41 of the Agricultural Law.

The facts, so far as material, are stated in the opinion.

*William C. Breed, Henry H. Abbott* and *Sumner Ford* for appellant. That provision of section 41 of the Agricultural Law prohibiting the sale, gift or delivery of coloring matter at the same time with the sale of oleomargarine interferes with the personal and property rights of the individual and is unconstitutional. (*Fisher Co.* v. *Woods,* 187 N. Y. 90; *People ex rel. M. S. Inst.* v. *Otis,* 90 N. Y. 48; *Matter of Jacobs,* 98 N. Y.; 98 *People* v. *Gillson,* 109 N. Y. 389; *People* v. *Hawkins,* 157 N. Y. 1; *Wright* v. *Hart,* 182 N. Y. 330; *People* v. *Biesecker,* 169 N. Y. 53; *Schnaier* v. *N. H. Co.,* 182 N. Y. 83; *People* v. *Marcus,* 185 N. Y. 257; *People* v. *Williams,* 189 N. Y. 131.) It is an improper exercise of the police power to prohibit the sale of two legitimate and wholesome articles of commerce because a purchaser might subsequently use such articles to accomplish an unlawful act. (*People* v. *Marx,* 99 N. Y. 377; *People ex rel. Tyroler* v. *Warden,* 157 N. Y. 116.) The statute is not calculated to prevent the deception of the public by the sale in hotels, restaurants and boarding houses of artificially-colored oleomargarine, an act already prohibited by law. (*Matter of Jacobs,* 98 N. Y. 98; *People* v. *Marks,* 99 N. Y. 377; *People* v. *Gillson,* 109 N. Y. 389; *People ex rel. Moskowitz* v. *Jenkins,* 202 N. Y. 53; *Hauser* v. *M. B. & M. Ins. Co.,* 206 N. Y. 455; *Lochner* v. *New York,* 198 U. S. 45.)

*Thomas Carmody, Attorney-General (Charles M. Stern* of counsel), for respondent. Section 41 of the Agricultural Law of the state of New York is constitutional. (*Sinking Fund Cases,* 99 U. S. 700; *People* v. *Hillman,*

58 App. Div. 571; *Plumley* v. *Commonwealth,* 155 U. S.
461; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1; *People*
v. *West,* 106 N. Y. 293; *People* v. *Arensberg,* 105 N. Y.
123; *Phelps* v. *Racey,* 60 N. Y. 10; *People* v. *Bowen,* 182
N. Y. 1; *McCulloch* v. *State,* 17 U. S. 4.)

HOGAN, J.     The record in this case and the briefs of
counsel for the respective parties present as the sole ques-
tion for consideration the validity of a provision of the
Agricultural Law of this state.

Briefly stated the facts are:  The defendant is a retail
grocer in the city of Brooklyn.     On or about the 28th day
of December, 1909, an inspector of the agricultural
department called at one of the stores of defendant and
purchased of him a one-pound print of oleomargarine,
which was taken by defendant from a box labeled " Oleo-
margarine."     The print was wrapped in oiled paper and
inclosed in a sealed carton, which was labeled " Oleomar-
garine."     The oiled paper bore the inscription " Absolutely
pure " — " John F. Jelke & Company " — " Good Luck
Oleomargarine."     Indented in the print were the words
" Jelke's Good Luck Oleomargarine " in letters at least
three-eighths of an inch in height.     The box from which
the package was taken bore a revenue stamp " United
States Internal Revenue Stamp for Oleomargarine free
from artificial coloration.  Tax $\frac{1}{4}$ cent per pound."     It
also bore the United States meat inspection stamp and
the domestic meat label.

At the time of the sale the purchaser, who was known
to the defendant as an inspector, inquired of defendant
whether he gave any coloring matter with the oleomar-
garine; defendant replied in the affirmative and gave to
the purchaser a capsule of coloring matter, which was
conceded to be a harmless vegetable compound.

It is claimed by the People that the act of the defend-
ant in the giving of coloring matter with the oleomargine
at the time of the sale of the same was a violation of sec-

tion 41 of the Agricultural Law, and rendered defendant liable to payment of the penalty therein prescribed.

Defendant insists that the provision of the statute referred to interferes with his personal and property rights and is, therefore, unconstitutional.

Legislation by Congress and the various states having in view the preservation of the public health and prevention of deception in the sale of dairy products or goods in resemblance thereof, and to prohibit the sale of impure and unwholesome articles of food, has been prolific of extended litigation in the courts of the various states as well as in the Federal courts. Prior to 1909 the present section 41 of the Agricultural Law read:

"No person manufacturing with intent to sell any substance or article in imitation or semblance of butter or cheese not made exclusively from unadulterated milk or cream, or both, with salt or rennet or both and with or without coloring matter or sage, but into which any animal, intestinal or offal fats, or any oils or fats or oleaginous substance of any kind not produced from pure, unadulterated milk or cream, or into which melted butter, or butter in any condition or state or any modification of the same, or lard or tallow shall be introduced, shall add thereto or combine therewith any annatto or compounds of the same, or any other substance or substances whatever, for the purpose or with the effect of imparting thereto a color resembling yellow, or any shade of yellow butter or cheese, nor introduce any such coloring matter or other substance into any of the articles of which the same is composed."

Other sections of the law prohibited the use of oleomargarine in any hotel, boarding house, restaurant, saloon, lunch counter or place of public entertainment except the words "Oleomargine used here" be plainly and conspicuously printed on the bill of fare and posted in places where the same could be easily seen and written in letters at least two inches in length, and likewise for-

bade the sale or use of any poisonous coloring matter for the coloring of any food product.

Such legislation was held to be within the police power of the state and not violative of any provision of the Federal or State Constitutions. (*People* v. *Arensberg*, 105 N. Y. 123; *People* v. *Biesecker*, 169 N. Y. 53; *People* v. *Girard*, 145 N. Y. 105; *Plumley* v. *Massachusetts*, 155 U. S. 461, 476; *Crossman* v. *Luhrman*, 192 U. S. 189; *Capital City Dairy Co.* v. *Ohio*, 183 U. S. 238.)

In 1909 the legislature of this state, evidently in the belief that an additional preventive remedy was necessary to give force and effect to the intention of the statute and to further guarantee the public against imposition and fraud, amended the provision of the Agricultural Law above quoted by adding thereto the following:

"And no person selling any oleaginous substance not made from pure milk or cream of the same as a substitute for butter shall sell, give away or deliver with such substance any coloring matter; * * * " (L. 1909, ch. 357, section 1.)

The language quoted is assailed by counsel for the appellant as violative of the statutory rights of defendant upon the ground that it tends to prohibit the sale of two legitimate products, oleomargarine and coloring matter at one and the same time on the alleged theory that it affords opportunity for the unlawful use of the two by third parties; that it is an unwarranted attempt on the part of the legislature to cause a legitimate and lawful act as between the seller and purchaser to become a crime, because of possibilities of such purchaser subsequently committing an unlawful act in connection therewith.

The brief of counsel for appellant contains the admission that the practice of giving away or offering for sale coloring matter, which is better known as butter color in connection with the sale of oleomargarine had become quite extensive throughout the country *undoubtedly for*

*the express purpose of increasing the sale of that product* (oleomargarine).

It is a well-known fact that a large quantity of oleomargarine is used by people who cannot afford to purchase butter. If it be the purpose of the manufacturer or dealer, as a means of increasing the sale of oleomargarine, to give to the purchaser coloring matter to mix with the same, an intention that the oleomargarine, thus colored, shall be used in imitation of butter is manifest.

Had color been added to the oleomargarine in Illinois shipped to this state and sold from the original package such sale would be a violation of the statute of this state. (*Plumley* v. *Massachusetts*, 155 U. S. 461, 472, 478.) In the *Plumley* case Mr. Justice Harlan wrote:

" If there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which it ought not to be supposed was intended to be surrendered to the general government, it is the protection of the people against fraud and deception in the sale of food products.  *  *  *  We are of opinion that it is within the power of a state to exclude from its markets any compound manufactured in another state, which has been artificially colored or adulterated so as to cause it to look like an article of food in general use, and the sale of which may, by reason of such coloration or adulteration, cheat the general public into purchasing that which they may not intend to buy. The Constitution of the United States does not secure to any one the privilege of defrauding the public."

That the legislature of this state in the exercise of the police power may exclude from the market a commodity that may result in fraud upon or deception of the public does not admit of doubt. Is the legislature powerless to enact a statute which shall tend to a prevention of the opportunity to violate the law or prevent an evasion of the same ? The manufacturer or dealer prohibited from selling oleomargarine mixed with coloring matter asserts

that he may sell the oleomargarine as such, and give with it at the time of such sale the coloring matter accompanied with instruction as to the use of the same. In effect he may educate the purchaser how the statute may be evaded or violated and enable the purchaser to place upon the market a compound in semblance of butter, thereby perpetrating fraud upon the public. Can it be that sales of oleomargarine would be largely increased thereby if this practice were permitted?

The argument that the purchaser of oleomargarine may secure coloring matter in a drug store or at a time other than the time of purchase of oleomargarine does not militate against the validity of a statute having in view the prevention of crime. Coloring matter purchased generally in the market may be pure and harmless or poisonous or hurtful. How is the purchaser of the same to know whether it is harmless or hurtful? That a dealer may sell or give away coloring matter at a time other than at a time when a sale of oleomargarine is made without violating the statute does not determine the question of the power of the state to prohibit the gift or sale of the same product when a sale of oleomargarine is actually made.

Assuming for the purposes of this case, which we do not deem it necessary to decide, that an individual has a right to purchase oleomargarine, procure coloring matter, and having mixed the same may use it in his family, such assumption does not establish a lack of power in the state to provide that purchasers of oleomargarine shall not be furnished the means whereby they can by mixture of products deceive the public.

The method employed by the manufacturer and dealer may result in the temptation to the keeper of a boarding house to purchase oleomargarine, secure the coloring matter, mix the articles in accordance with the instructions furnished by the manufacturer, and produce as a result an imitation of butter, which may be served as butter to

boarders. The retail dealer, in a neighborhood populated by people who are unable to ordinarily purchase butter, may likewise be tempted to compound the coloring matter and the oleomargarine, and sell it to such class of the community as butter. Many illustrations could be made, relating not only to the statute under consideration but to other laws of the state where an opportunity for violation of the same exists in the absence of legislation of the character of the law in question, but such examples would only tend to extend this opinion at too great length. Experience has demonstrated that numerous violations of the Agricultural Law and Excise Law and other statutes are of frequent occurrence.

Had the manufacturer of oleomargarine in Illinois added coloring matter to the same he would be compelled to pay a tax to the Federal government of ten cents per pound. (24 U. S. Stat. at Large, 209, § 8.) The tax paid upon the oleomargarine in question was one-quarter cent per pound. If the law of this state under consideration is to be condemned an opportunity is afforded the manufacturer and dealer not only to practice deception upon the public, but likewise to defraud the Federal government by the payment of one-quarter cent per pound upon oleomargarine without color, the manufacturer giving to the dealer gratis for distribution coloring matter to mix with the same.

We are not prepared to hold that the legislature exceeded its powers by attempting to curtail the opportunities of the manufacturer or dealer to perpetrate a deception upon the public, but rather that such legislation is within the police powers of the state. These reasons lead to an affirmance of the judgment.

The judgment should be affirmed.

WILLARD BARTLETT, Ch. J., WERNER, CHASE, COLLIN CUDDEBACK and MILLER, JJ., concur.

Judgment affirmed.