# SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

## July 11, 1918.

# THE PEOPLE v. EXCELSIOR BOTTLING WORKS, INC.

(184 App. Div. 45.)

PUBLIC HEALTH—VIOLATION OF NEW YORK SANITARY CODE, SECTION 68—
USE OF SACCHARIN IN SODA WATER—AUTHORITY OF BOARD OF HEALTH TO
ADOPT RESOLUTIONS WITH RESPECT TO SANITARY CODE—CONSTITUTIONAL
LAW—POLICE POWER.

Upon the prosecution of a bottling works corporation for a violation of
section 68 of the Sanitary Code and a resolution of the board of health,
in adulterating bottled soda with saccharin, it appeared that there was a
label on the bottle containing the address of the defendant and stating
that the contents were "sweetened with sugar and one one-hundredth of
one per cent. of Saccharin." Section 68 of the Sanitary Code provides
"That an article of food which does not contain any added poisonous or
deleterious ingredients shall not be deemed to be adulterated or mis-
branded in the following cases: *First.* In the case of mixtures or com-
pounds which may be now or from time to time hereafter known as
articles of food, under their own distinctive names, and not an imitation
of or offered for sale under the distinctive name of another article,
* * *." The provisions of the Sanitary Code are substantially the
same in effect as the Federal Food and Drug Act and the resolution of
the board of health "That foods or food products containing saccharin
be deemed adulterated under the Sanitary Code" was based on the action
of the Federal officials in construing the Federal act.

*Held,* on all the evidence, that soda water is not a natural food product
and that the alleged use of saccharin comes within the provision of
section 68 of the Sanitary Code relating to a mixture of compounds known
by their own "distinctive name;" that the label complied with the re-
quirements thereof, and that, therefore, the conviction should be reversed
and the information dismissed.

As the resolution of the board of health was not enacted in form as an
amendment to the Sanitary Code and as it was not shown that a certified
copy was filed with the city clerk as required by section 1172 of the

Greater New York charter, as amended, it cannot be given effect as an amendment of said Code nor can it be construed either as modifying or extending section 68 thereof.

The only authority of the board of health to adopt resolutions with respect to the Sanitary Code is to carry the provisions thereof into effect.

Since saccharin is not injurious to health its use may be regulated but cannot be prohibited under the exercise of the police power and, therefore, the resolution of the board of health was void.

APPEAL by the defendant, Excelsior Bottling Works, Inc., from a judgment of the Court of Special Sessions of the City of New York, Part VI, rendered against it on the 28th day of June, 1916, convicting it of a violation of the Sanitary Code, and also from an order entered in the office of the clerk of said court on the 7th day of August, 1916, denying defendant's motion for a new trial made upon the minutes.

*William C. Breed* of counsel (*Edward A. Craighill, Jr.,* with him on the brief; *Breed, Abbott & Morgan,* attorneys), for the appellant.

*John F. O'Brien* of counsel (*Terence Farley* and *William H. Kehoe* with him on the brief; *William P. Burr, Corporation Counsel*), for the respondent.

LAUGHLIN, J.:

The defendant is a domestic corporation and its conviction, which was by a divided court, was for having in its possession and offering for sale as a beverage on August 31, 1914, bottled strawberry soda, which it was alleged was adulterated in that saccharin, a deleterious ingredient, had been used therein as a sweetener or substitute for sugar, injuriously affecting the quality of the soda water, in violation of subdivisions (b) and (f) of section 68 of the Sanitary Code and a resolution of the board of health adopted August 22, 1911.

There was a label on the bottle containing printed matter as follows:

" Telephone No. 3609 Harlem

EXCELSIOR BOTTLING WORKS, INC.

407–411 E. 121st Street

NEW YORK CITY

STRAWBERRY

Capacity, 26 oz.

SWEETENED WITH SUGAR AND ONE-

One Hundredth of One per cent of SACCHARIN

(Benzo-sulphinide)

THIS BOTTLE IS NOT SOLD BUT MUST BE RETURNED WHEN EMPTIED."

It was conceded that the soda water contained the quantity of saccharin specified on the label, namely, one-hundredth of one per cent. Section 68 of the Sanitary Code, so far as here material, then provided as follows:

" No person shall have, sell or offer for sale in The City of New York any food which is adulterated or misbranded. The term food as herein used shall include every article of food and every beverage used by man and all confectionery.

" Food, as herein defined, shall be deemed adulterated: * * *

" (b) If any inferior or cheaper substances have been substituted wholly or in part for the article. * * *

" (f) If it contains any added poisonous ingredient, or any ingredient which may render such article injurious to health; or if it contains any antiseptic or preservative not evident and not known to the purchaser or consumer. * * *: Provided, That an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases:

" *First.* In the case of mixtures or compounds which may be now or from time to time hereafter known as articles of

food, under their own distinctive names, and not an imitation of or offered for sale under the distinctive name of another article, if the name be accompanied on the same label or brand with a statement of the place where said article has been manufactured or produced." (See Cosby's Code Ord. [Anno. 1914] pp. 148, 149, § 68. Now Sanitary Code, § 139; Cosby's Code Ord. [Anno. 1917] pp. 422, 423, § 139.)

Counsel stated on the argument that the provisions of the Sanitary Code are substantially the same in effect, although not in phraseology, as the act known as the Federal Food and Drugs Act (34 U. S. Stat. at large, 769, 770, § 7; Id. 770, 771, § 8.) It appears that the Secretary of Agriculture requested the Referee Board of Consulting Scientific Experts to investigate and report, among other things, whether saccharin in foods was deleterious to health and whether it reduced, lowered or injuriously affected the quality or strength of food. The board made a report in writing to the effect that saccharin in small quantities added to food was not injurious to the health of normal adults, and when added in either small or large quantities does not alter the quality or strength of food; but that if so added as a *substitute* for sugar it "must be regarded as a substitution involving a reduction of the food value of the sweetened product and hence as a reduction in its quality," for the simple reason that sugar has a food value and saccharin has no nutritive value. The Secretaries of Agriculture, Commerce and Labor and of the Treasury construed the report as showing that saccharin in food was a poisonous *or* deleterious ingredient as contemplated by the Federal Food and Drugs Act and that its *substitution* for sugar in foods " reduces and lowers their quality " and thereupon made Food Inspection Decision No. 135, for the guidance of inspectors of the Department of Agriculture to the effect that the Secretary of Agriculture would after the 1st of July, 1911, regard foods having saccharin as adulterated under said act. Before

that date, however, said Secretaries extended the time when the former decision was to take effect, and the Secretary of Agriculture called upon said board to advise whether said decision No. 135 was in accord with the former report of said board; and on the 13th of January, 1912, the board reported, among other things, as follows:

" The Referee Board is compelled, on the basis of the experimental evidence, to hold to the view that the addition of small quantities of saccharin to food does not constitute an adulteration, since here is no evidence that small quantities of the substance are deleterious to the health of normal adults.

" The addition of saccharin to foods, in large or small quantities, does not, so far as the findings of the Referee Board show, affect in any way the quality or strength of the food. This statement is not in any sense contradictory to, or lacking in harmony with, the statement that the addition of saccharin to food as a substitute for cane sugar is a substitution involving a reduction in the food value of the sweetened product and may thus result in a reduction in its quality. The simple addition of saccharin to a food cannot, in the opinion of the Referee Board, be considered as an adulteration through any reduction in the strength or quality of the food, since no such effect follows its addition to the food. On the other hand, the substitution of saccharin for cane sugar, for example, in any food product may result in a decided lowering of food value, and this certainly must be considered as an adulteration.

" In the opinion of the Referee Board the use of saccharin in food in quantities that might constitute a menace to health is improbable, since its extreme sweetness would naturally limit its consumption by the individual to amounts below what might prove injurious (in harmony with the conclusions expressed in the original report of the Board). On the other hand, the possibility of substituting saccharin for sugar, thereby lowering

the food value of the sweetened products is a serious menace, and one that should be carefully safeguarded."

Thereupon the majority of the Secretaries made Food Inspection Decision No. 142, holding that the use of saccharin as a substitute for sugar in sweetened foods constitutes an adulteration because it is only used as a sweetener and it displaces sugar which has a food value; but they also held that saccharin when intended for use in the prevention, cure or mitigation of disease, and used in products plainly labeled to show that it is intended for the use of persons who, on account of diseases, must abstain from the use of sugar, came within the classification of drugs and was not affected by the decision. That decision, I think, intended to prevent the use of saccharin as a sweetener for food products proper, such as canned vegetables, preserves and candy. It is stated therein that it was found that saccharin was so used in more than fifty food products and that it was possible by such use to produce indigestion. It is quite evident that the Secretaries were not considering the use of saccharin in beverages. Secretary of the Treasury MacVeagh dissented in an opinion, taking the ground that one-hundredth of one per cent of saccharin in any food product could not possibly be deleterious to health and that the use of saccharin could be regulated by requirements with respect to labels and otherwise, and that inasmuch as it was not deleterious to health its use should not be prohibited.

So far as appears, the question has not been before the Federal courts for decision with respect to the use of saccharin in food products. The resolution of the board of health on which, with the provisions of the Sanitary Code, which do not refer specifically to saccharin, the conviction was founded, was adopted on the 22d day of August, 1911, and it clearly appears by the preamble thereto that it was based on the action of the Secretaries of Agriculture, Commerce and Labor and of the

Treasury, on the first report of the Referee Board, which had been misunderstood. The resolution is as follows:

" WHEREAS, Following an investigation made by the Referee Board of Consulting Scientific Experts to the Secretary of Agriculture, Food Inspection Decision No. 138 was promulgated, as follows:

" ' Paragraph 3 of Food Inspection Decision No. 135 is hereby modified to read as follows:

" ' The Secretary of Agriculture, therefore, will regard as adulterated under the food and drugs act foods containing saccharin which, on and after January 1, 1912, are manufactured or offered for sale in the District of Columbia or the Territories, or shipped in interstate or foreign commerce, or offered for importation into the United States.'

" Therefore, be it

" *Resolved,* That foods or food products containing saccharin be deemed adulterated under the Sanitary Code."

On the trial counsel for the People stated the claims of the prosecution as follows: " The People's only contention here is that the action of the Board of Health in making that ordinance will be sustained upon the ground solely that the use of saccharin in food is a virtual fraud on the public, * * * in so far as its foods value is concerned. * * * There is no contention in this case that the use of saccharin is harmful in and of itself, but that the position which the city takes in order to sustain the ordinance is that it depreciates the value of the food as a food product."

The uncontroverted evidence shows that the use of soda water as a beverage containing this quantity of saccharin could not possibly be injurious to health, and that there is greater danger to injury to health from consuming too much sugar than from the consumption of saccharin in such a percentage. It also appears that the use of sugar in any form is injurious to people suffering from diabetes and some other diseases, while

the use of saccharin by them to flavor food and render it palatable is prescribed by medical authorities.

The only possible theory on which such use of saccharin could be prohibited is to prevent deception by leading purchasers and consumers to think that the food products had been sweetened by sugar, which contains a food value, and not by saccharin, which has no food value. There is no evidence of deception and the label is designed to prevent deception. Soda water is not a natural food product but it a compound of food products, and I am of opinion that such use of saccharin comes within the proviso contained in said section 68 of the Sanitary Code relating to a mixture of compounds known by their own *distinctive name,* and that the label complied with the requirements thereof. (United States v. 40 Barrels and 20 Kegs of Coca Cola, 215 Fed. Rep. 535; Weeks v. United States, 224 id. 64; Washburn & Co. v. United States, id. 395; United States v. One Carload of Corno Horse & Mule Feed, 188 id. 453; United States v. 779 Cases of Molasses, 174 id. 325.) The resolution of the board of health was not enacted in form as an amendment of the Sanitary Code and it cannot be given effect as such, for it was not shown that a certified copy was filed with the city clerk as required by section 1172 of the Greater New York charter (Laws of 1901, chap. 466), as amended by section 3 of chapter 628 of the Laws of 1904. The resolution, therefore, cannot be construed either as modifying or extending said section 68 of the Sanitary Code. The only authority of the board to adopt resolutions with respect to the Sanitary Code was to carry the provisions thereof into effect. (Greater N. Y. Charter, § 1262.) Moreover, since saccharin is not injurious to health, its use may be regulated but cannot be prohibited under the exercise of the police power, and, therefore, I think the resolution was void. (People v. Biesecker, 169 N. Y. 53; People v. Arensberg, 103 id. 388, 5 N. Y. Crim. 77; People v. Marx, 99 id. 377, 3 N. Y. Crim. 200;

People v. Bowen, 182 id. 1, 10; Curtice Bros. Co. v. Barnard, 209 Fed. Rep. 589; State v. Hanson, 118 Minn. 85; 40 L. R. A. [N. S.] 865. See also, Waite v. Macy, 246 U. S. 606.) If a *standard* of purity or with respect to the ingredients to be used in making soda water had been prescribed by the Legislature or by legislative authority, then it might well be argued that no other ingredients could lawfully, be used in making it. (See dissenting opinion of LEARNED, P. J., in People v. Cipperly (37 Hun, 324), on which the decision was reversed (101 N. Y. 634, 4 N. Y. Crim. 69). It is perfectly obvious that entirely aside from the question of disease or medical advice some people may desire, especially in hot weather, a cooling beverage that contains no food value or that has been sweetened to render it palatable by the use of saccharin instead of by the use of sugar, and there is, therefore, no occasion or authority for prohibiting such use of saccharin.

It follows that the conviction should be reversed and the information dismissed.

CLARKE, P. J., DOWLING, SHEARN and MERRELL, JJ., concurred.

Judgment reversed and information dismissed. Order to be settled on notice.