The judgment of the St. Louis Criminal Court of Correction is affirmed.

*Brace, C. J., Marshall, Burgess, Valliant, Fox* and *Lamm, JJ.,* concur.

---

## CITY OF ST. LOUIS v. SCHULER, Appellant.

### In Banc, October 20, 1905.

1. **MILK: Preservatives: Formaldehyde: Constitutionality of Ordinance.** It is competent for the Legislature, and for the city of St. Louis by ordinance, to prohibit the preservation of milk by placing a preservative therein, such as formaldehyde to keep it from souring. In doing so the city is exercising its police power in regard to a subject affecting the public health, to-wit, an article of food of general use and prime necessity.

2. ———: ———: ———: ———: **Ground on Which Power Rests.** The ground upon which the prohibition against the use of preservatives in milk rests, is not to be found in the fact that a use of the preservative does not tend to deceive or mislead purchasers and consumers, but upon the right of the Legislature or municipal assembly to pass all needful and proper laws or ordinances to secure the purity of an article of general use, and to prevent any tampering with it by absolutely prohibiting the use of artificial substances therein.

3. ———: ———: ———: ———: ———: **Impure Milk.** Even where any deleterious impurity of the germs of specific diseases is absent, adulterated or diluted milk is not wholesome or nutritious.

4. ———: ———: ———: ———: ———: **Natural Decomposition.** The purchaser of milk has the right to assume that the milk he buys will go through the natural process of oxidation and decomposition, and that nothing has been added to prevent it from souring according to the course of nature.

5. ———: ———: ———: ———: ———: **Fraud and Deception.** When the court is asked to declare that a city has no power to enact an ordinance preventing the use of a preservative in milk, it is not enough for the seller to show that he did not intend to defraud, or that the milk he sold was not unwholesome.

6. ———: ———: ———: ———: ———: **Judicial Notice.** It can not be said that the effect of formaldehyde in milk is so well known not to be deleterious to health, that the courts must take judicial knowledge of that fact.

7. ———: ———: ———: ———: ———: **Legislative Function: Right to Property.** It is for the legislative department of government, in passing an ordinance for the protection of the public health, to determine whether the use of a preservative in milk, such as formaldehyde, is injurious. And in preventing the sale of milk containing such a preservative, it in nowise or manner destroyed the seller's right to property.

8. ———: ———: ———: **Privilege of Selling Pure Milk.** Where the city prevents the sale of milk having any preservative in it, it in no sense prohibits the dealer in milk from selling pure milk, unmixed with any foreign matter.

9. ———: **Constitutionality of Ordinance.** For the reason given in St. Louis v. Liessing, page 464 of this volume, the ordinance under consideration in this case, which was a suit by the city to collect a penalty of $25 from defendant for placing a preservative in milk sold by him, in violation of said ordinance, is *held* to be constitutional.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Hiram N. Moore,* Judge.

AFFIRMED.

*E. F. Stone* for appellant.

(1) The production, sale and distribution of dairy products is a legitimate and lawful occupation or business, conducted as a matter of right and not as a privilege. Unusual and arbitrary restrictions cannot be lawfully imposed upon it by ordinance. Nor can harsh, expensive and burdensome provisions be enacted against persons engaged in an innocent and useful business so as to deprive them of the right to devote their property thereto and obstruct their freedom and liberty. Ex parte Whitnell, 98 Cal. 78; Matter of Jacobs, 98 N. Y. 110; State ex rel. v. Ashbrook, 154 Mo. 395. An ordinance cannot, without reason, and arbitrarily, infringe upon the liberty or the property rights of any person or class of persons within the protection of the Constitution, under the plea that it is a police regulation for the protection of the public health. It must not go further

than is necessary and appropriate, and must not require things to be done, burdens to be carried, property consumed or rights sacrificed when unnecessary for the protection of health. People v. Gillson, 109 N. Y. 389; Slaughter-House Cases, 16 Wall. 106; State v. Julow, 129 Mo. 163; State v. Fisher, 59 Mo. 174. (2) An ordinance may be adjudged unreasonable, oppressive, partial and vexatious by the courts, and declared null and void, and it must be reasonable, impartial and not oppressive, or it will be declared invalid and unconstitutional. Cooley, Const. Lim., 280; Beach on Pub. Corp., sec. 512; Freund on Police Power, sec. 142; Corrigan v. Gage, 68 Mo. 545; Fire Dept. v. Gilmore, 149 N. Y. 453; Ritchie v. People, 155 Ill. 98; Frost v. Chicago, 178 Ill. 250; Tryman v. Chicago, 78 Ill. 405; City of Clinton v. Phillips, 58 Ill. 102; State v. Railroad, 68 Minn. 385; State v. Mayor, 37 N. J. L. 351; Nicoulin v. Lowry, 49 N. J. L. 394; Matter of Frazee, 63 Mich. 397; Kirkham v. Russell, 76 Va. 962; Gates v. Milwaukee, 10 Wall. 497; Kneedler v. Borough, 100 Pa. St. 373; White v. Railroad, 44 Mo. App. 542; City v. Starke, 93 Mo. App. 70. (3) No doubt the police power of the city may not only be used to protect the public health, but also to prevent a fraud upon the people, and necessary ordinances may be passed for those purposes; but the rights of property cannot be invaded, interfered with or destroyed under the pretense of a police regulation enacted for either of the purposes mentioned. The sale of a well-known article of food or a product conclusively known to be wholesome, could not be forbidden or prohibited by ordinance, even though it assumed to be in the interest of the public health. The enactment of a standard of purity of an article of food, failing to comply with which the sale of the article is illegal, to be valid must be within reasonable limits and not of such a character as to practically prohibit the manufacture or sale of that which, as a matter of com-

mon knowledge, is good and wholesome.   People 'v. Bie-
secker, 169 N. Y. 53; Freund on Police Power, sec. 33;
State v. Layton, 160 Mo. 496; Railroad v. City of Jack-
sonville, 67 Ill. 37; Town of Lakeview v. Cemetery Co.,
70 Ill. 191; Beebe v. State, 6 Ind. 501.   The Legislature
cannot arbitrarily declare any article of food in general
use, and wholesome, to be unhealthy, and its production
and sale a crime.   State v. Layton, 160 Mo. 496; Dillon,
Mun. Corp. (4 Ed.), sec. 141, p. 211.   (4)   Said ordi-
nance is unconstitutional and void, because it violates
the 14th amendment to the Constitution of the United
States, which provides, "Nor shall any State deprive
any person of life, liberty or property without due pro-
cess of law, nor deny to any person within its jurisdic-
tion the equal protection of the law." And also sec. 30,
article 2, of the Constitution of Missouri, "That no per-
son shall be deprived of life, liberty or property with-
out due process of law." State v. Julow, 129 Mo. 172;
2 Story on Const. (5 Ed.), sec. 1950; People ex rel. v.
Otis, 90 N. Y. 48; State v. Loomis, 115 Mo. 307; State
v. Walsh, 136 Mo. 406; Cooley, Const. Lim. (6 Ed.),
484; Bank v. Oakley, 4 Wheat. 236; Wally's Heirs v.
Kennedy, 2 Yerg. 554.   And "no State shall make or
enforce any law which shall abridge the privileges or
immunities of citizens of the United States." In re
Jacobs, 98 N. Y. 98; State v. Loomis, 115 Mo. 307. (5)
Ordinances which tend to restrain competition and cre-
ate monopolies or tend to confer exclusive privileges are
generally condemned.   "They are void because they in-
terfere with the liberty of the individual to pursue a
lawful trade or employment." Chicago v. Rumpf, 45
Ill. 90; City of Cairo v. Fuechter, 159 Ill. 155; People
v. Gas Trust Co., 130 Ill. 268; McQuillin, Mun. Ord.,
sec. 189; Yick Wo v. Hopkins, 118 U. S. 371; Butchers'
Union v. Crescent City Co., 111 U. S. 762; Marshall &
Bruce Co. v. City, 71 S. W. 619.

St. Louis v. Schuler.

*Chas. W. Bates* and *Wm. F. Woerner* for respondent.

(1) The principles of law in this case are identical in most respects with those in the cases of City of St. Louis v. Liessing, *ante,* 464, and City of St. Louis v. Polinsky, *ante,* 516, which are briefed, argued and submitted herewith. (2) (a) We frankly concede, however, that a more forcible argument can be made against that part of section 17 here in issue, which inhibits the carrying for sale of milk "containing any foreign substances of any kind whatever . . . or any adulteration or preservative," etc., than in the other sections of the ordinance; and that the appellant's contention of its invalidity receive support in the case of People v. Biesecker, 169 N. Y. 53. We submit, however, for the consideration of the court that there were reasons not referred to in that case, which ought to control. (b) Thus, on the other hand, a statute in Massachusetts prohibiting the sale or carrying with intent to sell of milk to which "any foreign substance has been added" (which of course, includes preservatives) has in several decisions been treated, without discussion, as valid. Commonwealth v. Tobias, 141 Mass. 132; Commonwealth v. Gordon, 159 Mass. 8; Commonwealth v. Schaffner, 146 Mass. 514; Commonwealth v. Wetherbee, 153 Mass. 160. (c) A buyer has a right "to assume that the milk he buys . . . will go through the natural process of oxidation and decomposition. He may wish to use sour milk for culinary purposes, and has the right to assume that nothing has been added to prevent a chemical change. . . . It may be conceded that the milk sold by defendant was not harmful to the health of those who used it; but it is certainly dangerous to the public to permit milkmen to adulterate it in such manner as to change its constituent properties." State v. Schlenker, 112 Iowa 647. (d) We think the legislating power has

the right to decree that when such a universal food article as milk is sold, it shall be pure milk, and not milk with something else in it and added thereto. We cannot be sure what reasons prevailed or what motives may have actuated the assembly in prohibiting these preservatives and all foreign substances; but when all of the provisions in ordinance 20808, and in section 17 thereof, are read together, the good intent and motive of the enactment cannot be questioned. It may be that it was feared that formaldehyde or other unsuspected preservative might interfere in cases where calculation as to the time it takes milk to sour is essential, or in medicinal or chemical calculations. There may be other good reasons a layman does not know. At all events the buyer has a right to get what he buys. All the ordinance does is to secure this right. Danger in mixing in any foreign substance, whether supposed to be only a preservative or not, in such a food as milk, is sufficiently possible to justify the upholding of a law prohibiting any tampering with it at all. Defendant's property is not destroyed or affected in the least; he has the right to sell pure milk, but not milk with some other stuff in it.

GANTT, J.—The defendant in this case is charged with violating ordinance No. 20,808, section 17, in that in the city of St. Louis on the 28th day of July, 1903, he did then and there carry, control and expose for sale at Twenty-first and Chestnut streets, milk which did contain a preservative known as formaldehyde. On a trial on appeal, he was convicted in the St. Louis Court of Criminal Correction, and fined twenty-five dollars. From that judgment he appeals to this court on the ground that said ordinance and said section thereof are unconstitutional and void in that they deprive the defendant of his natural rights to liberty and the enjoy-

ment of the gains of his own industry, and of his property and liberty without due process of law, and because said ordinance is unconstitutional and void in that it is beyond the power of the Municipal Assembly to pass and enact the same.

Section 17 of said ordinance provides: "Any person, firm or corporation, who shall sell, expose for sale, exchange, deliver, dispose or transport, convey or carry, or with any such intent as aforesaid have in his or her care, custody, control or possession any milk or cream having therein or containing any foreign substance of any kind whatever, or coloring matter, or any adulteration, or preservative whether for the purpose of artificially increasing the quality of the milk or cream, or for preserving the condition or sweetness thereof, or for any purpose whatever, shall be deemed guilty of a misdemeanor," etc.

The evidence on the trial disclosed that on July 28, 1903, one of the deputy milk inspectors of said city did take a sample of milk from a wagon of the defendant, put it in a bottle and sealed it, and handed it to the city chemist; that this sample was analyzed by the said city chemist on the same day and found to contain a preservative known as formaldehyde; that formaldehyde is an "organic compound oxidation product of alcohol," and was used by defendant to prevent the milk from becoming sour. J. C. Cabanne, an expert for the city, testified he was a milk dealer since 1868, and in business in St. Louis since 1872, and now supplied the city business to the extent of 5,000 gallons a day. He showed that milk could be kept sweet and good by simply keeping it cold, and that it was not at all necessary to use formaldehyde for that purpose, and that he "always refused to take milk with preservatives in it." Also that he had "kept milk stored for 21 days without preservatives in it, just at a temperature of 34. His milk is shipped into the city from a distance as far as a hundred

miles.'' The quantity of formaldehyde, in this particular instance, was not determined, as the ordinance did not require it, but the testimony was that there was only small quantities of it in the sample. There was evidence tending to show that the test used by the city chemist was not a conclusive one, but there was no pretense that either of the experts, Dr. Richter or Prof. Keyser, made any test of the sample in question. On the part of the defendant evidence was offered to show that formaldehyde in sufficient quantities to preserve milk from souring was not injurious to the health.

At the conclusion of the evidence the defendant prayed the court to declare the law to be that under the testimony and the law the plaintiff could not recover and that the ordinance was unconstitutional and unreasonable as a matter of law, and as shown by the evidence in the case. This instruction the court refused. After motions for a new trial and in arrest of judgment were filed, heard and overruled, the defendant appealed to this court.

I. This case involves some of the objections to the constitutionality and validity of the ordinance in question that were made and decided adversely to the defendant in St. Louis v. Liessing, found on page 464 of this volume, and hence we must decline to again consider those objections.

II. The real question in this case is whether it is competent for the Legislature or the Municipal Assembly of the city of St. Louis to prohibit the preservation of milk by placing a preservative therein. On the part of the city it is insisted that it was entirely competent to prohibit the addition of any foreign substance, which, of course, includes preservatives in milk offered for sale, whether the said foreign substance or added matter is or is not injurious to health, and that a buyer has the right to assume that the milk he buys will go

through the natural processes of oxidation and decomposition. On the other hand, it is insisted that the Legislature cannot forbid or wholly prevent the sale of a wholesome article of food, and that this section of the ordinance is clearly distinguishable from those considered in the other cases which we have decided under this ordinance at the present term, in that, it cannot be justified as an exercise of power to prevent fraud or imposition, nor can it be sustained under the power of the Legislature or municipality to require a standard of purity for milk or other food products, but it strikes down the preservation of food and milk, which is a proper and lawful purpose in itself. The defendant insists that the use of formaldehyde or other preservative is not to practice any form of deception, or to artificially improve the standard of the milk, but its purpose is to prevent decay in a product which without the presence of such preservative naturally becomes unfit for use in a very short period; and that there is a marked distinction between the protection of health by requiring a proper standard of purity and the prevention of imposition on consumers and the mere preservation of an article otherwise up to the standard, and the introduction of such preservative having no tendency to deceive consumers and purchasers. Another contention of the defendant is that the ordinance itself does not declare or ordain the adding of such a preservative an adulteration.

It will be seen that these diverse contentions raise a most important question, one somewhat more difficult of solution than either of those presented in the other milk cases considered by the court at this time.

The insistence on the part of the defendant has the full support of the Court of Appeals of New York in People v. Biesecker, 169 N. Y. 53. In that case a statute of New York, which provided that "no person shall sell, offer or expose for sale, any butter or other dairy

products containing a preservative, but this shall not be construed to prohibit the use of salt in butter or cheese, or spirituous liquors in club or other fancy cheese, or sugar in condensed milk,'' was held unconstitutional. In that case Judge CULLEN, speaking for the whole court, reviewed previous decisions of that court, sustaining legislation which prohibited the manufacture or sale of any article so compounded as to imitate butter, as in People v. Arensberg, 105 N. Y. 123, and People v. Kibler, 106 N. Y. 321, defining what should be deemed unwholesome or adulterated milk, and People v. Girard, 145 N. Y. 105, forbidding the manufacture or sale of vinegar containing any artificial coloring matter, but drew a distinction between the statutes upon which those cases rest and the statute prohibiting the use of a preservative in butter, and reached the conclusion that the latter could not be justified as an exercise of the police power to prevent fraud or deception on buyers and consumers, and that the preservation of food was a lawful and laudable object. The learned judge conceded that in the use of these preservatives there was danger of adulteration and of the use of processes injurious to the public health, and that the regulation of these subjects for the protection of the public health and the prevention of imposition on consumers, was within the power of the Legislature, and the propriety of its exercise could not be questioned, but that under the guise of regulation, the Legislature could not destroy the industry, and that it was not a valid regulation which, in dealing with the means of preserving food, makes the preservation of food itself an unlawful act; that ingredients and processes might be prohibited as unwholesome, or causing deception, but not solely because they preserve. It is well in all these cases to keep constantly in view the fundamental principles involved in them. Under our system of government the legislative branch is empowered to enact all laws necessary to protect the

public health, but it is conceded that its acts must have such a relation to the public health that the courts by inspection can discern that they relate to and are convenient and appropriate to promote the public health and are not mere arbitrary provisions which the courts can see have no natural connection with the professed purpose of subserving the public health. Happily in these cases it is manifest upon the face of the ordinance that the Municipal Assembly was exercising its police power in regard to a subject affecting the public health, to-wit, an article of food of general use and prime necessity, and that the purpose of the ordinance was to preserve the purity of the milk supply and to secure to the people of St. Louis, pure and unadulterated milk. As said in St. Louis v. Liessing, "On no one subject has the police power been affirmed so often as the right to inspect and regulate the sale of milk and cream." The subject-matter, then, was clearly within the powers of the city council to regulate, and the sole question remaining for us to determine at this time is whether, in the attempt to regulate the sale of milk, the Municipal Assembly went beyond the limits of legitimate legislation on that subject.

It is insisted by the defendant, and in that he is supported by the Court of Appeals of New York, in People v. Biesecker, 169 N. Y. 53, that this provision against the use of any preservative in milk is to be distinguished from those cases sustaining the exclusion of annatto and other coloring substances for the reason that the use of a preservative does not tend to deceive or mislead purchasers and consumers. We think the ground upon which this prohibition against the use of preservatives in milk rests is the right of the Legislature, and in this case the Municipal Assembly, to pass all needful and proper ordinances to secure the purity of milk, and to prevent any tampering with milk by absolutely prohibiting the use of artificial preservatives

therein.  As said by the Court of Appeals of New York in People v. Girard, 145 N. Y. l. c. 109, ''Food should be pure, absolutely and unquestionably pure.  No trick should be played with it.  The Legislature may resolutely protect it.''  The argument of the defendant that a preservative stands upon a different basis from mere coloring matter which is liable to deceive, is in our opinion more plausible than sound.  It is a matter of common knowledge that milk is a necessary food of the sick and of the infirm, of the old and the young; that through the agency of impure milk the germs of many diseases are disseminated, and even where there is an absence of any deleterious impurity of the germs of specific diseases adulterated or diluted milk is not wholesome and nutritious.  [Norfolk v. Flynn, 101 Va. l. c. 475.]

In State v. Schlenker, 112 Iowa l. c. 645, the Supreme Court of that State said: ''But it is said that the Legislature had no power to forbid the sale, without deceit or fraud, of a harmless and wholesome article of food.  This may be true, as a general proposition; but it is also true that in virtue of the police power it may pass such laws as are, or may reasonably appear to be, necessary for the health, comfort and safety of the people. . . .  That the sale of milk to which water and boracic acid have been added may amount to a fraud upon the purchaser is evident.  He has the right to assume that the milk he buys is unadulterated, and that it will go through the natural process of oxidation and decomposition.  He may wish to use sour milk for culinary purposes, and has the right to assume that nothing has been added to prevent chemical change. . . . It may be conceded that the milk sold by defendant was not harmful to the health of those who used it; but it is certainly dangerous to the public to permit milkmen and those dealing in milk to adulterate it in such manner as to change its constituent properties.  The statute does not deprive the defendant of his property, but it does

impose upon him the duty of so using it that no injury will result to others, most likely to be affected by a disregard on his part of the reasonable health regulations that it enacts.''

In that case the defendant put boracic acid in the milk which he sold, and testified that he used it as a preservative, and that its use was necessary to keep the milk from souring, and he introduced experts to show that the quantity of boracic acid used tended to prevent decomposition and would have no deleterious effect on the consumer. The court held that it was not enough to show that the defendant did not intend to defraud, or that the milk he sold was unwholesome. If that be true, almost any law intended to protect the public health and safety might be overthrown; that it was enough that the adulteration such as prescribed by the statute might defraud and prove deleterious to the public health, or comfort; that the Legislature might well determine that the adulteration of milk tends to facilitate vicious processes, and that it ought to be prohibited.

In Com. v. Waite, 11 Allen 264, the court used the following language: ''It is innocent and lawful to sell pure milk, and it is innocent and lawful to sell pure water; and the argument is that the Legislature has no power to make the sale of milk and water, when mixed, a penal offense, unless it is done with a fraudulent intent. But it is notorious that the sale of milk adulterated with water is extensively practiced with fraudulent intent. It is for the Legislature to judge what reasonable laws ought to be enacted to protect the people against this fraud, and to adapt the protection to the nature of the case. They have seen fit to require that every man who sells milk shall take the risk of selling a pure article. No man is obliged to go into the business; and by using proper precautions any dealer can ascertain whether the milk he offers for sale has

been watered. The court can see no ground for pronouncing the law unreasonable, and has no authority to judge as to its expediency.''

In People v. Biesecker, 169 N. Y. l. c. 60, the court said: ''There is doubtless in the prosecution of these industries danger of adulteration and of the use of processes injurious to public health.''.

In State v. Layton, 160 Mo. 474, the act of March 11th, 1899, making it ''unlawful for any person or corporation doing business in this State to manufacture, sell or offer to sell any article, compound or preparation of food, in which article, compound or preparation, there is any arsenic, calomel, bismuth, ammonia or alum,'' came before this court on a prosecution of the defendant for selling and offering for sale Layton's Health Food Baking Powder, a compound and preparation containing alum. The act was challenged as unconstitutional because it was insisted that the said baking powder was wholesome and innocuous and the small amount of alum used therein was not deleterious. It was clear that the baking powder in question was not an *imitation* of any standard baking powder and therefore did not fall within the doctrine of State v. Addington, 77 Mo. 110, and State v. Bockstruck, 136 Mo. 356, but the constitutionality of the statute was upheld on the ground that it was competent for the Legislature to protect the health, morals and safety of the people so long as enactments did not transgress the rights secured by the State and Federal Constitutions, and that the court approached the charge of invalidity and unconstitutionality of the act with the presumption in favor of the law, and that when it appeared that there was a dispute as to the wholesomeness of an article of food or drink, then it was a legislative question and the Legislature had the right to inquire for itself, and either prohibit or regulate its manufacture or sale as to it might seem best; that the constitutionality of the act could not be

made to depend upon the proof in each individual case whether the article was or was not wholesome. It was said in that case that if an article of food is so universally conceded to be wholesome and innocuous that a court may take judicial cognizance of that fact, the Legislature has no right under our Constitution to prohibit its sale or use. Much of the argument in this case is predicated upon this last proposition, and the defendant insists that because formaldehyde works such a chemical change in the character of milk that it will not sour, and because it is for this reason classed as a preservative, the Municipal Assembly could not lawfully prohibit its use in milk. The trial court refused to go into the evidence tendered that formaldehyde in proper quantities was not injurious to health. Evidently it cannot be said that the effect of formaldehyde in milk is so well known not to be deleterious, that the courts must take judicial cognizance of that fact. That its action is such that it changes the chemical properties of the milk so that it will not sour was established and conceded on the trial, and it was for this reason that it was insisted that, as it preserved the milk from souring, it was claimed to be highly beneficial. We cannot accept this conclusion. It must be recognized that it was a legislative function, in the passage of this ordinance for the preservation of health, to insist that milk should have neither adulterants or preservatives placed in it, and to inquire as to the effect thereof. The Municipal Assembly may have investigated and found this very fact, that when formaldehyde or boracic acid was placed in milk it would change its chemical properties and prevent its souring, and prevent it going through natural processes of oxidation and decomposition, and that thereby the housewife desiring to have the milk sour for culinary purposes, or the physician administering it as food to children and sick persons would be misled in his calculation as to its effect on his patients. But in addition to this,

the Municipal Assembly might well have reasoned that while one preservative used in carefully prepared proportions might not be injurious to the health of consumers, it would be exceedingly dangerous to permit the vendors of milk with little or no scientific knowledge and less scruples, each to select his own so-called preservative, and use it without knowledge as to the quantities which were safe, which would open the door to all sorts of dangerous adulterations and to the use of highly injurious processes, and that the discovery 'of such practices might never be made until incalculable injury had occurred and that the only safe course, considering the nature of the business, was to prevent absolutely the placing of such preservatives in milk having such an effect as was shown in this case. In so doing, the Municipal Assembly in no manner destroyed or affected the defendant's right of property. He had the right to sell pure and unadulterated milk of the standard prescribed by the ordinance, and the purchaser and the consumer of milk had the right to purchase from him pure milk unmixed with any foreign matter added to it, and this was what the ordinance required, no more and no less, and in so doing, it infringed no provision of the organic law of this State or any article of the Federal Constitution. The 'judgment of the St. Louis Court of Criminal Correction is affirmed.

*Brace, C. J., Marshall, Burgess, Valliant, Fox* and *Lamm, JJ.,* concur.