## CITY OF ST. LOUIS v. HARRY KELLMAN, Appellant.

### In Banc, July 18, 1922.

1. **SALE OF MILK: Lawful Business: Police Regulation.** A lawful business is subject to the police power of the State, and of municipalities to which the State has given police powers; and notwithstanding the production and sale of milk is a lawful business, the city of St. Louis has power to enact and enforce reasonable ordinances prescribing the terms upon which milk may be sold within its corporate limits.

*Held*, by WOODSON, J., dissenting, that the ordinance in this case, which prohibits the sale of milk within the city by any person unless he applies to and obtains from the Board of Public Service a permit, is void, in that it delegates legislative power to a mere administrative board, and expressly authorizes said board, arbitrarily or otherwise, to exercise its discretion and will in granting, refusing or revoking said permit, and to determine, by no fixed and uniform rule, to what persons said permit shall be issued and from whom withheld.

2. ———: ———: ———: **Permit.** The permit which the ordinance requires the seller of milk to obtain is but a method of registration of milk sellers, and it and the ordinance requirement that it "be kept conspicuously posted at each business place of the grantee" are meant to be a guaranty to the public that the milk which the grantee sells is wholesome.

3. ———: **Without Permit: Evidence That Milk is Wholesome.** Where defendant is charged with selling milk without a permit, in violation of ordinances requiring him to apply for and obtain such permit as a condition of his right to sell milk within the city, evidence that his dairy is wholesome and clean, and that the milk he has been selling for many years has always been healthy, wholesome and pure, is not competent.

4. **ORDINANCE:** Title: In Revision: Repeal. An ordinance whose title is "in revision" of certain existing ordinances is broad enough to include the repeal of certain sections of the ordinances mentioned in the title.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. A. A. Hochdoerfer,* Judge.

AFFIRMED.

*Wm. L. Bohnenkamp* for appellant.

(1). Clauses 26 and 32 of Section 53, Article IV, Constitution of Missouri, forbidding the passage by the Legislature of special laws and those granting special privileges apply to municipal corporations as well as to the Legislature. St. Louis v. Construction Co., 244 Mo. 479. The charter of St. Louis is founded upon express provisions of the Constitution which provided that

such charter shall be subject to the Constitution and in harmony with its provisions. The new charter is subject to the same provisions. Mo. Constitution, secs. 20, 22 and 23, art. 9. The Constitution forbids the passage of any local or special law granting to any person any special right, privilege or immunity. Mo. Constitution, cl. 26, sec. 53, art. 9. And this provision applies as well to the city of St. Louis as to the State. Hays v. Poplar Bluff, 263 Mo. 533. (2) Said ordinance violates Section 30, Article II, Constitution of Missouri, which provides "that no person shall be deprived of life, liberty or property without due process of law." And also violates the provisions of Amendments V and XIV of the Constitution of the United States. State v. Julow, 129 Mo. 172. Sections 17, 18, 19, 20 and 21 of said Ordinance No. 28646 are also invalid as being in violation of the Constitution of Missouri and of the United States in that the Board of Aldermen undertook by way of a revision of certain ordinance provisions to declare it unlawful to engage in the production, sale and distribution of dairy products in said city of St. Louis, keep a dairy, sell, prepare for sale or offer for sale, such products within said city, or bringing into the city for sale such products without a special permission so to do from the Board of Public Service, said board being therein expressly authorized to exercise its discretion and will in granting, refusing or revoking such permits. This amounts to a delegation of the legislative power of the city to a mere board or boards, and therefore said sections of said ordinance are invalid and unconstitutional. Hays v. Popular Bluff, 263 Mo. 516-534; St. Louis v. Atlantic Quarry Co., 244 Mo. 479; St. Louis v. Dreisverner, 243 Mo. 217; St. Louis v. Hill, 116 Mo. 527-533; Elkhart v. Murray, 165 Ind. 304; Barthet v. New Orleans, 24 Fed. 63; State v. Mahner, 43 La. Ann. 496; State v. Dubarry, 44 La. Ann., 1117; Newton v. Balger, 143 Mass. 598; State v. Tenant, 110 N. C. 609-612. This ordinance not only prevents and prohibits

the citizen from selling, offering for sale or producing dairy products within the city, but it also prevents and prohibits him from bringing such products into the city for sale without first making application for a permit so to do in the office of the Board of Public Service and be granted such a permit by said board.    This provision deprives a citizen of his liberty and property without due process of law and is unconstitutional.    State v. Miksicek, 225 Mo. 561; State v. Bottling Co., 261 Mo. 300; State v. Tie & Timber Co., 181 Mo. 536; State v. Julow, 129 Mo. 163; State v. Walsh, 136 Mo. 407; Wooley v. Mears, 226 Mo. 49; Lochner v. New York, 198 U. S. 45; Allyeyer v. Louisiana, 165 U. S. 588.    (3)    An ordinance which establishes no provisions by which its impartial enforcement can be secured, but invests the board or an officer with an arbitrary power to decide in what cases it shall be enforced and who shall be exempt from its operation and which may be exercised only in the interest of a favored few, is void as being unreasonable and discriminating.    Section 36 of this Ordinance is null and void as coming within the above rule:    St. Louis v. Heitzeberg Packing Co., 141 Mo. 375; Yick Wo. v. Hopkins, 118 U. S. 366.    (4)    Sections 28 and 36 of said ordinance are invalid, null and void for the reason that they operate to prevent and prohibit the bringing into the city and the sale and distribution therein of unpasteurized milk except as per the arbitrary will and the combined tyrannical and despotic discretion  of certain officers or boards of said city.    State v. Goodwill, 33 W. Va. 179; Yick Wo v. Hopkins, 118 U. S. 366; In re Wo Lee, 26 Fed. Rep. 471; 6 Am. & Eng. Ency. Law, p. 966.    (5)    Should either Section 28 or 36 be declared void (we contend both should be declared void), the entire ordinance is void and must be so found.    This ordinance is an entirety.    It is intended to be a complete system of regulations in the form of a by-law providing for the production, sale, handling and distribution of milk and milk products.    Hays v. Poplar Bluff, 263 Mo.

534; State v. Gordon, 236 Mo. 170; Austin v. Murray, 16 Pickering, 121-126; Nalley v. Insurance Co., 250 Mo. 452; Hannibal v. Telephone Co., 31 Mo. App. 31; 21 Am. & Eng. Ency. Law, p. 994. (6) Section 36 is also void as being a delegation of legislative power to the health commissioner. Said commissioner is only a ministerial officer and possesses no legislative power of any kind. State v. Carlisle, 235 Mo. 251; Merchants Exchange v. Knott, 212 Mo. 636-642; Neill v. Gates, 152 Mo. 594; McQuillin on Municipal Ord. sec. 88. (7) Said ordinance is wholly void and invalid for the reason that its inevitable tendency and effect is to create, establish and encourage monopoly and be injurious to the public. From its very provisions its natural and necessary consequences are to control prices, limit production or suppress competition in such manner as to restrain trade and create and sustain monopoly. Town of Kirkwood v. Highlands Packing Co., 94 Mo. App. 637; State v. Armon, 173 Mo. 387; City of Lamar v. Wideman, 57 Mo. App. 507; City of Chicago v. Rumpff, 45 Ill. 90-96; Ex .parte McKenna, 126 Cal. 429; Trigman v. City of Chicago, 78 Ill. 405; Ennison v. Chicago & C. R. Co., 45 Minn. 370; McQuillin, Munc. Corp. secs. 729, 736, 738, 189; 20 Am. & Eng. Ency of Law, p. 850. (8) Ordinance No. 28648 is invalid as being in violation of Section 13, Article IV, of the Charter, providing that "no bill shall contain more than one subject," which shall be clearly expressed in the title. State v. Revelle, 257 Mo. 538; City of Kansas v. Payne, 71 Mo. 159; City v. Wortman, 213 Mo. 140; State v. Pursinger, 76 Mo. 346; State v. Great Western Tea Co., 171 Mo. 634. (a) Section 38 of said ordinance constitutes a separate and independent subject from the subject stated in the title. Then clearly the ordinance is double and unconstitutional, both on that account and also for the reason that it is not stated in the title to the ordinance. (b) Said oridnance is also void as containing a subject or subjects entirely foreign to the one expressed in the title,

to-wit, repeal and amendment. Vincent v. Knox, 27 Ark. 282; Falconer v. Robinson, 46 Ala. 348; 26 Am. & Eng. Ency. Law, p. 572.

*Henry S. Caulfield* and *George F. Haid* for respondent.

(1) Appellant not having endeavored to secure a permit is in no position to attack the validity of the ordinance in question. State v. Baskowitz, 250 Mo. 89; Alaska Mexican Gold Mining Co. v. Territory of Alaska, 236 Fed. 70; Gundling v. Chicago, 177 U. S 186. (2) The subordination of property rights to the just exercise of the police power is as complete as is the subjection of these rights to the proper exercise of the taxing power. Kidd v. Pearson, 128 U. S. 1. (3) A lawful business is subject to the police power of the city vested in it by the State. City of St. Louis v. Grafeman Dairy Co., 190 Mo. 504; State ex rel. Lieberman v. Van DeCarr, 199 U. S. 562; Hadacheck v. Los Angeles, 239 U. S. 410. (4) An ordinance should be upheld if it can be construed as valid. Bledsoe v. Stallard, 250 Mo. 165; State ex rel. v. Mason, 153 Mo. 49. And every possible presumption is in favor of validity. Sinking Fund Cases, 99 U. S. 718. (5) An ordinance or statute should be so construed, if possible, as to bring it in harmony with the Constitutional provisions. State ex rel. v. Atkinson, 271 Mo. 42; Hooper v. California, 155 U. S. 648. (6) The ordinance does not violate the provisions of the Constitution of the United States and is a valid exercise of the police power of the city. State ex rel. Lieberman v. Van DeCarr, 199 U. S. 562; Gundling v. Chicago, 177 U. S. 187; Powell v. Pennsylvania, 127 U. S. 678; State v. Addington, 77 Mo. 110; State v. Bockstruck, 136 Mo. 335; St. Louis v. Fisher, 167 Mo. 654; Hadacheck v. Los Angeles, 239 U. S. 410. (7) Discretionary power conferred upon administrative boards to grant or withhold permission to carry on a trade or

business under a regulative ordinance does not render the ordinance unconstitutional. State ex rel. Lieberman v. Van De Carr, 199 U. S. 562; Hall v. Geiger-Jones Co., 242 U. S. 553; St. Louis v. Weitzel, 130 Mo. 620. (8) Authority to make administrative rules is not a delegation of legislative power. State v. Hathaway, 115 Mo. 47; Gregory v. Kansas City, 244 Mo. 523; Field v. Clark, 143 U. S. 649, 694; United States v. Grimaud, 220 U. S. 521; Caha v. United States, 152 U. S. 211; Oceanic Navigation Co. v. Stranahan, 214 U. S. 333; McKinley v. United States, 249 U. S. 397; Plymouth Coal Company v. Pennsylvania, 232 U. S. 542. (9) An ordinance regulating the handling and sale of milk is not objectionable as an arbitrary discrimination because it does not apply to dealers in other articles of food. State ex rel. Lieberman v. Van DeCarr, 199 U. S. 552, 563.

GRAVES, J.—Appellant was prosecuted in one of the city courts of St. Louis, upon the following complaint or information:

"Harry Kellman, ·

To the City of St. Louis, Dr.

"To $200, for the violation of an ordinance of said city, entitled: 'Ordinance in revision of the general ordinance of the City of St. Louis,' being general ordinance No. 28646, Chapter ——, Article ——, Sections 17 to 37 inclusive, approved March 30, 1916 in this, to-wit:

"In the City of St. Louis and State of Missouri, on the 30th day of July, 1917, the said Harry Kellman did then and there operate and conduct a dairy and selling milk without a permit from the Board of Public Service so to do at 3145 Clay Avenue, contrary to the ordinance in such case made and provided.

"WILLIAM YOUNG.

"Chief of Police of the City of St. Louis."

In said court he was tried and convicted, and fined $25 and costs. He appealed to the court of Criminal Cor-

rection, where he filed an elaborate motion to quash, charging in many ways the invalidity of the ordinance under which he was being prosecuted. This motion the court overruled. Upon a trial in Division 2 of the St. Louis Court of Criminal Correction, the following facts were admitted:

"It is agreed that the defendant on the day charged in the information, the 30th day of July, 1917, was operating and conducting a dairy and selling milk without a permit from the Board of Public Service at 3145 Clay Avenue, St. Louis, Missouri; that said defendant's permit to sell milk in the city of St. Louis had been revoked prior to said 30th day of July, 1917, to-wit, on the 24th day of July, 1917, by the Board of Public Service, which had theretofore been granted to him; that said defendant, Harry Kellman, herein had a hearing before said Board of Public Service on said 24th day of July, 1917, and after such hearing the Board of Public Service revoked his said permit, and that after said permit was so revoked said defendant conducted and operated his said dairy and sold milk therefrom on the date charged in the information.

"That the defendant is the owner of his said dairy, dairy premises and dairy cows, 55 in number, all of which, excluding the family residence, is worth from $15,000 to $18,000. His said residence adjacent to said dairy premises is worth about $7,000.

"That at the time there was existing in the city of St. Louis an ordinance known as General Ordinance No. 28646, which had been passed by the Board of Aldermen of the city of St. Louis and approved by the Mayor of the City of St. Louis on March 30, 1916.

"Defendant, however, does not agree that the Board of Public Service ever had any power to grant the defendant a permit to operate and conduct a dairy and to sell milk therefrom in the city of St. Louis, nor that said board had any power to revoke such permit, nor does the defendant agree that said ordinance heretofore

referred to is valid, but to the contrary contends that said Board of Public Service had no power to grant such permit to operate and conduct said dairy and to sell milk therefrom in the city of St. Louis, and therefore had no power to revoke such permit, and further contends that the aforesaid ordinance referred to is unconstitutional, null and void.''

In addition to these agreed facts, the plaintiff, city of St. Louis, offered in evidence Sections 17 to 37, inclusive, of Ordinance No. 28646, mentioned above, and the same were admitted over the objections and exceptions of defendant.

On the trial defendant made the following offers of proof, which the court excluded:

''THE COURT: Read into the record what you intend to show by these people.

''Whereupon counsel for the defendant stated that he offered to show by certain witnesses that are familiar with the defendant's said dairy and the milk produced therein and sold therefrom that said dairy was clean and sanitary in every respect and that the milk sold therefrom by the defendant was clean, pure and wholesome.

''Defendant offered to show by a witness whose father and mother had bought milk from the defendant from his said dairy for over a period of twenty years, and that the father and mother of witness have eight children, of which he, witness, is one, all of whom are living; that witness's father and mother are also living, and that said eight children had been raised by the milk that came from the defendant's said dairy, and that each and every one of them are grown up, strong and healthful individuals, and that his mother and father are both living at this time and are well, healthy and happy.

''Defendant further offered to prove by witness John C. Steinlage, who is an experienced dairyman, having been in the dairy business for many years and who lives in the city of St. Louis near the defendant's dairy in question and who observed the defendant's

dairy from time to time, that the defendant's dairy is in first-class condition and that the defendant is producing clean and wholesome milk.

"Defendant further offered to prove by witness Fred A. Kuhlmann of 4012 Palm Street, who had known the defendant and his dairy for a period of six years immediately preceding this prosecution, that said witness is a man of family and has raised a baby by the use of the defendant's milk, produced at and sold from his said dairy in question. That witness's baby had been seriously ill, having been at the point of death, and then recovered by the use of milk produced at and acquired from defendant's dairy, and witness has ever since and is now using milk for his said baby and his family from the defendant's said dairy That the baby of witness at the time of its said illness was only eight weeks of age, and that it quickly recovered good health by the use of milk from defendant's said dairy, and that said baby is now thirteen months old, and that witness used that kind of milk so obtained from defendant's dairy for his said baby at the direction of a practicing physician.

"Defendant offered to show by other witnesses instances of like character.

"Defendant also offered to show that prior to the 24th day of July, 1917, the day upon which the Board of Public Service revoked the defendant's permit, the Board of Health on a number of occasions gave the defendant the recommendation of having a good clean dairy."

The court thereupon, December 8, 1917, found defendant guilty, and fixed his fine at $10 and costs. From such judgment this appeal is taken.

Counsel elaborately preserved all points made in a motion for new trial and in arrest of judgment, but to no avail. We are not favored with briefs in behalf of the city, although ten days' time was granted for the filing thereof, at the date of the hearing in this court. The time limit has long since elapsed.

I.  We have stated that the city of St. Louis has not enlightened us with briefs herein.  It perhaps concluded that all phases of the St. Louis milk ordinance have been before this court.  A very large portion of the 190 Missouri Report, is taken up with St. Louis milk cases.  [St. Louis v. Liessing, 190 Mo. 464; St. Louis v. Grafeman Dairy Co., 190 Mo. 492; St. Louis v. Grafeman Dairy Co., 190 Mo. 507; St. Louis v. Reuter, 190 Mo. 514; St. Louis v. Polumsky, 190 Mo. 516; St. Louis v. Schuler, 190 Mo. 524.]

**Former Adjudications.**

Since the advent of the writer upon this bench, we have further considered St. Louis milk cases.  [St. Louis v. Bippen, 201 Mo. 528, and St. Louis v. Klausmeier, 213 Mo. 119.]  The present case is a new attack upon St. Louis milk ordinances.  We note from the ordinance before us that the city in revising its milk ordinance took note of what we said in Klausmeier's Case, and in the respect there noted has made its ordinance conform with the State law.

In all these sundry cases, we have ruled that the city of St. Louis, in exercise of its police power, could pass ordinances regulating the sale of milk, and fixing a standard of quality below which it could not be sold.

When we concluded Klausmeier's Case it was thought we had fully written upon the St. Louis milk ordinances.  This view, may have induced the city to rely upon what had gone before, and stand upon its judgment in this case without further suggestion (by way of brief) at this time.  However, if there be a new question in the instant case, we will endeavor to find and dispose of it.  We proceed, however, having in view the words of GANTT, J. (for the Court in Banc), in the case of City of St. Louis v. Liessing, 190 Mo. l. c. 480, as follows:

"The ordinance assailed has for its subject-matter the inspection of milk and cream and the regulation of the sale thereof.  It is obviously a police regulation to

guard against the sale or dissemination of an unwholesome and injurious quality of milk and cream and to protect the public against imposition, fraud and deception as to an article of food almost universally used by the people. The city of St. Louis, as has been repeatedly declared by this court, derives its charter in pursuance of constitutional provisions and the police powers delegated therein are conferred by the State upon the municipality, and so long as they are not inconsistent with the Constitution and laws of the State they are valid upon all who come within their scope and authority. [St. Louis v. Fischer, 167 Mo. 654, 194 U. S. 361; Kansas City v. Oil Co., 140 Mo. 458.] By the express provision of Section 26, Article 3, of the charter of St. Louis, authority is given 'for the inspection of butter, cheese, milk, lard and other provisions,' and 'to secure the general health of the inhabitants by any measure necessary,' and 'to pass all such ordinances as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures.' None of the objections sought to be secured by the charter are of more importance than the health of its inhabitants, and ordinances having such in view have been often upheld as an exercise of the police power of the State delegated to the city. [St. Louis v. Galt, 179 Mo. 8-18; Ferrenbach v. Turner, 86 Mo. 416; Smith's Mod. L. Mun. Corp., sec. 1322 et seq.; Crossman v. Lurman, 192 U. S. 189.] The provisions of the Federal Constitution, invoked by appellant, were not designated to interfere with the exercise of the police power by the states, and they have not shorn the states of their police power to regulate trades and occupations so as to guard against injury to the public, nor of regulating the use of property so as to prohibit that which is injurious and dangerous to the community. [St. Louis v. Fischer, 167 Mo. 654; State v. Addington, 77 Mo. 110; State v. Bockstruck, 136 Mo. 335; Powell v. Com., 114 Pa. St. 265; Powell v. Pennsylvania, 127 U. S. 678.]"

II. The only charge against Kellman is that within the city of St. Louis he conducted a dairy and sold milk therefrom without having a permit from the Board of Public Service. Section 17 of the ordinance reads:

Ordinances.

"PERMITS.—Every person who shall bring into the city of St. Louis for sale, or who shall, within said city, sell, prepare for sale, offer for sale, expose for sale, dispose of, exchange or deliver, or with the intent so to do as aforesaid, have in his possession, care, custody or control, within said city, milk, skimmed milk, cream, buttermilk or milk prepared by a fermentation or other process, shall first make application for a permit so to do in the office of the Board of Public Service and be granted such a permit by the Board of Public Service. Provided, however, that nothing in this ordinance, except Section 11 hereof, shall be so construed as to apply to the handling of condensed milk."

Section 18 of the ordinance provided for a sworn statement, as to required facts, to be made by the applicant for a permit. Section 19 provides that the permit shall be in the name of the applicant, and shall not be transferable. Section 20 provides that the permit shall run for one year, unless sooner revoked. Section 21 thus reads:

"The Board of Public Service may, in its discretion, refuse to grant a permit to anyone who shall have been repeatedly convicted of violating the ordinances of the city of St. Louis or laws of the State of Missouri, concerning the inspection and regulation of dairies and the inspection and sale of dairy products, or when for any reason in the interest of the health of the inhabitants of the city, it would be inadvisable to grant a permit to such applicant. The Board of Public Service may revoke any permit for the same reason for which they may refuse to issue a permit. No permit as milk vendor shall be refused by the Board of Public Service, nor shall any such permit be revoked, except

after a due hearing upon due notice at which the applicant or grantee shall have full opportunity to be heard under such rules and regulations as the Board of Public Service prescribes.''

Section 22 fixes standards for whole milk. Section 23 fixes standards for skimmed milk, and the manner of its sale. Section 24 fixes standard for cream. Section 25 fixes standard for buttermilk. Section 26 prohibits sale of adulterated or mis-branded milk. Other sections deal with pasteurized milk, etc. Finally Section 37 makes a violation of the ordinance, or any section thereof, punishable by a fine of not less than ten nor more than two hundred dollars.

We have given this detail of the ordinance, in order that its true character may appear. Its whole purpose is to secure wholesome milk for the citizens of the city.

III. It is urged with much vehemence that the production and sale of milk is a lawful business, and to require persons engaged in that business to secure a permit, is violative of constitutional rights. We
Lawful
Business. have not failed to reach this point in the sundry milk cases from St. Louis. A lawful business is subject to the police power of the State, and its municipalities, to which the State had given police powers. In City of St. Louis v. Grafeman Dairy Co., 190 Mo. l. c. 504, this court thus disposed of the question:

''The fact that the selling of milk is a lawful trade or business does not exempt it from reasonable police regulations. In Gundling v. Chicago, 177 U. S. 183, the Supreme Court of the United States tersely stated the recognized rule on this subject. 'Regulations respecting the pursuit of a lawful business or trade are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business or occupation they shall apply, are questions for the city to determine, and their determination comes within the proper exercise of the police

St. Louis v. Kellman.

power by the State, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizens are unnecessarily, and in a manner wholly arbitrarily, interfered with or destroyed without due process of law, they do not extend beyond the power of the State to pass.'

"When it is considered that no article of food is more unversally used by the public, and that no other article is perhaps so sensitive to atmosphere and vegetable influences as milk, and that it is within a common knowledge that impure milk is a fruitful source of disease and disorders, especially among children, it needs no discussion to show that the milk business is one which particularly falls within the power of the State and its municipality to regulate, and that the imposition of one dollar a year for registration is in no sense an onerous or unjust burden, and is intended as a pure police measure to cover in part the cost of inspection of milk and cream, is too plain for discussion. We have no hesitancy in holding that the statement in so far as it charged a failure to register and the failure to pay the one dollar registration and inspection fee, stated a good cause of action, and, therefore, the Court of Criminal Correction erred in quashing the whole case."

In the latter part of Section 19 of the ordinance is found this sentence: "A permit shall be kept conspicuously posted at each business place of the grantee." It thus appears that the very purpose of the permit was to protect the public. It indicated to the purchasers that the municipality had determined that the holder of the permit could be relied upon for a wholesome quality of the article sold. It is like the license from the State Board of Health to a doctor. Such license bespeaks the qualifications of the holder, and thus protects the general public. The permits or licenses authorized by this ordinance perform the same function. They say to the general buying public: You

will be safe in buying from this man (the holder of the permit), because he can be relied upon to furnish a wholesome article. And further the issuance of permits is but another method of registration of milk sellers. The city, in the exercise of its police power, had the authority to require milk sellers to take out such permits. In fact there is no question urged in this case (along constitutional objections) which has not been fully threshed out by this court in some of our previous cases, all of which we have cited, supra.

IV. The proffered evidence was properly excluded. The charge was that defendant was doing business without a permit. Whether he was lawfully entitled to a permit is another question, but not in this case. If his permit had been wrongfully cancelled, or if a new permit had been wrongfully refused, he had his appropriate remedies, but that did not justify the doing of business without the permit, or license.

Evidence.

V. Lastly it is charged that the ordinance is invalid in that it contravened the charter provision providing that "no bill shall contain more than one subject." The title reads:

"An ordinance in revision of articles Three and Four of Chapter Nine of the Revised Code of St. Louis, nineteen hundred twelve, and of ordinance number twenty-seven thousand, five hundred and fifteen, and of ordinance number twenty-seven thousand, six hundred and four."

The point made is that by Section 38 of the instant ordinance some named sections of the Revised Code (mentioned in the title) and two ordinances (27515 and 27604, mentioned in the title) were repealed. The repealing of certain parts of previous milk ordinances, by the revised ordinance, is the subject which it is urged is not expressed in the title. We do not think the contention well taken. This was, as the title indicated, a

revising ordinance. It was a revision of the previous ordinances, adding and changing some parts and cutting out other parts. This idea was fully expressed in the title.

The sundry constitutional questions are so fully disposed of in our previous rulings, that there is little excuse for the length of this opinion. The other questions are without merit, as above indicated. The judgment is therefore affirmed. *James T. Blair, C. J.,* concurs in result; all other judges concur, except *Woodson* and *Higbee, JJ.,* who dissent; *Woodson, J.,* in separate opinion.

WOODSON, J. (dissenting).—The appellant was arrested and convicted in the city of St. Louis, Missouri, for violating the following ordinance thereof:

"Sec. 17. PERMITS.—Every person who shall bring into the city of St. Louis for sale, or who shall, within said city, sell, prepare for sale, offer for sale, expose for sale, dispose of, exchange or deliver, or with the intent so to do as aforesaid, have in his possession, care, custody or control, within said city, milk, skimmed milk, cream, buttermilk or milk prepared by a fermentation or other process, shall first make application for a permit so to do in the office of the Board of Public Service and be granted such a permit by the Board of Public Service. Provided, however, that nothing in this Ordinance, except Section 11 hereof, shall be so construed as to apply to the handling of condensed milk."

In due course the cause reached this court, and my learned associate Judge GRAVES has written an opinion in the cause upholding the conviction; and for the following reasons to be stated, I dissent from that opinion.

Counsel for appellants contend that:

"Sections 17, 18, 19, 20 and 21 of said Ordinance No. 28646 are also invalid as being in violation of the Constitution of Missouri and of the United States in that the Board of Aldermen undertook by way of a

revision of certain ordinance provisions to declare it unlawful to engage in the production, sale and distribution of dairy products in said city of St. Louis, keep a dairy, sell, prepare for sale or offer for sale, such products within said city, or bringing into the city for sale such products *without a special permission so to do from the Board of Public Service,* said board being therein expressly authorized to exercise its discretion and will in granting, refusing or revoking such permits. This amounts to a delegation of the legislative power of the city to a mere board or boards, and therefore said sections of said ordinance are invalid and unconstitutional.''

In my opinion the contention of counsel is well taken.

The ordinance mentioned nowhere prescribes the terms or conditions upon which the Board of Public Service will, shall or should not issue the permit mentioned, so its issuance must rest wholly within the discretion of the board, whether that be a sound discretion based upon the law and ordinances, or the mere arbitrary power of the board. This I contend violates both of the constitutional provisions mentioned, because the appellant's right to engage in a lawful business is not determined according to law, but the sweet and arbitrary will of the board; this clearly is an attempt on the part of the city to place its paternal hand upon the interests of the people thereof, with the manifest intention of granting to itself the undefined and arbitrary power to determine who shall or shall not be granted a permit to conduct a lawful business within the city limits; this would clearly give the board the power to determine who shall have the special privilege of carrying on a dairy business in the city.

In the discussion of the same arbitrary power of the city council of the city of Poplar Bluff, this court in the case of Hays v. Poplar Bluff, 263 Mo. 516, l. c. 534, said:

''The mayor and city council of Poplar Bluff, under the charter power we have quoted, undertook to establish fire limits within which they attempted to make it unlawful *without a special permission from the mayor and city council,* 'to construct any edifice, building, structure or shed, the outer walls of which are in whole or in part made of wood.' The combustible character of the structure seems to be entirely ignored. A shed with metal angles or gas pipe for frameword and tarred paper for walls and roof would evade the description of the prohibited structures as completely as brick or stone with fireproof roof. But the vice most important in this ordinance is its general scheme by which the city council places its paternal hand upon the interests of the people of the city with the manifest intention of gathering to itself the undefined and arbitrary power to determine who shall have the special privilege of erecting buildings of combustible materials in these areas, and who shall be denied, without being entitled to the courtesy of a reason. This cannot be done. The reason is well expressed by the Supreme Court of Indiana, in Elkhart v. Murray, 165 Ind. 304, as follows: 'If an ordinance upon its face restricts the right of dominion which the owner might otherwise exercise without question, not according to any uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the city authorities, it is invalid, because it fails to furnish a uniform rule of action, and leaves the right of property subject to the will of such authorities, who may exercise it so as to give exclusive profits or privileges to particular persons.' The wealth of authority opened by the court in its citations in that case has been of great assistance in the investigation of the subject. This court also, in St. Louis v. Russell, 116 Mo. 248, 257, held an ordinance of the city of St. Louis invalid 'for the reason that by its provisions one citizen is permitted to erect a livery stable in a certain locality by obtaining the written con-

sent of the owners of one-half the ground in the block, while another of like merit would not be permitted to do so for want of such consent.' In that case the court cites, with its approval, numerous authorities; among others, Barthet v. New Orleans, 24 Fed. 63, in which an ordinance of that city was held invalid which made it unlawful to maintain a slaughter house 'except permission be granted by the council of the city of New Orleans;' State v. Mahner, 43 La. Ann. 496, in which an ordinance forbidding the keeping of more than two cows by any person within certain prescribed limits in the city without a permit from the city council was held void; Richmond v. Dudley, 129 Ind. 112, in which an ordinance forbidding the storing of inflammable or explosive oils within the limits of the city of Richmond, without the permission of the common council, was held void; State v. Dubarry, 44 La. Ann. 1117, in which an ordinance of the city of New Orleans was held void because it prohibited the setting up of any private market without permission of the city council; Newton v. Belger, 143 Mass. 598, in which an ordinance permitting the board of aldermen to exercise their discretion in granting or refusing permits for the erection of buildings within the fire limits was held invaild; and State v. Tenant, 110 N. C. 609, 612, in which a like fate befell an ordinance of Asheville, North Carolina, forbidding the erection of a building in the city without having first applied to the aldermen and obtained permission for that purpose. All these cases were decided upon principles stated in Elkhart v. Murray, supra, and repeated by the Supreme Court of North Carolina in the case last cited, as follows: 'If an ordinance is passed by a municipal corporation, which, upon its face, restricts the right of dominion which the individual might otherwise exercise without question, not according to any general or uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, because it fails to furnish a uniform rule of action and leaves

the right of property subject to the despotic will of aldermen who may exercise it so as to give exclusive profits or privileges to particular persons.' The sentence quoted is followed by a long list of authorities to the same effect. The same principle is restated, with a liberal citation of authorities, by this court in St. Louis v. Atlantic Quarry Co., 244 Mo. 479, 487. Our conclusion is that the ordinance in question is void, because it is not within the legislative powers delegated to the city by its charter; because it violates the fundamental principle inherent in our constitutional system that when a municipal corporation seeks by ordinance to restrict for the public good the rights of the individual otherwise incident to the ownership of property, it must do so by a rule applicable to all alike under the same circumstances, and cannot make his enjoyment of his own depend upon the arbitrary will or caprice of the municipal legislature; and because its refusal to consider applications for relief from the enforcement of its prohibitory terms unless accompanied by the written consent of the property owners of the block amounts to a delegation of the legislative power of the city to such property owners.''

The only distinction between the ordinance now under consideration and the one in the case just cited is that the words ''special privilege'' are used in the latter while they are omitted in the present one, but that omission none the less makes this one a special privilege because the permit may not be issued as suits the pleasure of the board, and no court or counsel could tell why such refusal was made. .

The same rule is announced by this court in the case of City of St. Louis v. Atlantic Quarry Co., 244 Mo. 479, and on page 486, the court said:

''As we have already seen, the charter gives the municipal assembly no power to prohibit the operation of stone quarries in the city of St. Louis, so that the only question for us to consider is whether the prohibition

under which this action was instituted is transformed into a regulation by the implied permission which it contains to apply to the municipal assembly for the passage of another ordinance. We know of no better definition of the thing which constitutes 'regulation' in the sense we are now considering it than that which is contained in the syllabus of Montgomery v. West, 42 So. 1000. It is as follows: 'A city charter authorized the city to suppress nuisances in the manner directed by the city council, which had power to perform any acts incident to bodies corporate. An ordinance forbade the operation of steam engines, planing mills, foundries, blacksmith shops, etc., within the city without first obtaining the consent of the council. Held, invalid, in that it failed to prescribe a uniform rule of action, but reserved to the council the right to grant or withhold the privilege arbitrarily.' It is absolutely within the discretion of the municipal assembly whether it shall pass the permissive ordinance or not. If it does not a lawful business has been destroyed, if the theory of the city is correct, without any opportunity for redress. In St. Louis v. Russell, 116 Mo. 248, BURGESS, J., in the opinion of this court holding void an ordinance of the city of St. Louis providing that 'No livery, boarding or sale stables shall be located on any block of ground in St. Louis without the written consent of the owners of one-half the ground of said block,' cited a large number of cases in which the position we have taken in this opinion is upheld. To these we add the following: Yick Wo v. Hopkins, 118 U. S. 356; Plymouth v. Schultheis, 135 Ind. 339; Bills v. Goshen, 117 Ind. 221; Elkhart v. Murray, 165 Ind. 304; Winthrop v. Chocolate Co., 180 Mass. 464; Austin v. Murray, 16 Pick. 126; State v. Tenant, 110 N. C. 609; Boyd v. Frankfort, 117 Ky. 199; Barthet v. New Orleans, 24 Fed. 563.

"It has been said that it is not to be assumed that councils or officers in exercising the dispensing power will act arbitrarily, or otherwise than in the exercise of

a sound discretion. In the Chocolate Company Case above cited the court disposed, of that question as follows: 'Nor is it any answer to say, that the whole matter is left to the selectmen, and that they may be presumed to act in a reasonable manner. It does not expressly or by necessary implication require them to adjudicate and determine that it is necessary to prohibit the proposed erection and use for the prevention of fire or the preservation of life, but leaves them to act upon any reason whatever. It cannot be said that such a by-law is authorized by the statute.' "

There are other good and lawful reasons why the majority opinion in this case does not correctly declare the law of the State, as shown by the court in the last cited case as appears on page 488 thereof.

For the reasons stated I dissent from the majority opinion.